■ KAREN A. CHARLAND, Respondent, v BRUCE A. CHARLAND, Appellant. [700 NYS2d 254] —Mikoll, J. Appeal from a judgment of the Supreme Court (Dawson, J.), entered October 2, 1998 in Clinton County, granting plaintiff a divorce and ordering equitable distribution of the parties' marital property, upon a decision of the court.

Plaintiff and defendant were married in 1981 and had four children. Following their separation in 1993, custody of the children was awarded to plaintiff by a Family Court order entered in October 1993. This action for a divorce was commenced in May 1995. Immediately prior to commencement of trial in April 1997, defendant withdrew his answer, permitting plaintiff to obtain a divorce on the ground of cruel and inhuman treatment. Trial commenced as to the remaining issues, with the parties stipulating to the terms of the Family Court custody order, to child support determined in accordance with the Child Support Standards Act (Domestic Relations Law § 240 [1-b] [hereinafter CSSA]), and to the value of all marital assets and liabilities except the marital residence and defendant's corporation. Supreme Court thereafter rendered a written decision upon the issues of custody, child support, maintenance and equitable distribution. From the judgment entered thereon, defendant now appeals.

Defendant first asserts that reversal is mandated because Supreme Court's determinations as to custody, child support and equitable distribution improperly relied on certain stipulations by the parties which did not conform to the requirement of Domestic Relations Law § 236 (B) (3) in that they were not

"in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded". This assertion is without merit. The requirements of Domestic Relations Law § 236 (B) (3) pertain to stipulations which effect the equitable distribution of marital property (*see generally, Matisoff v Dobi,* 90 NY2d 127, *lv denied* 91 NY2d 805). Here, the parties' stipulations related to the *value* of certain marital property (and debt), equitable distribution of which was determined by the court, custody and the manner in which child support was to be calculated. As such, their stipulations were not marital agreements within the meaning of Domestic Relations Law § 236 (B) (3), but rather agreements by the parties, through their counsel in open court, within the purview of CPLR 2104. With respect to custody, independent of the parties' stipulation thereto, the court found that continuation of the Family Court order with respect to custody and visitation was in the best interests of the children.

Defendant next contends that Supreme Court abused its discretion in awarding maintenance to plaintiff in view of her cohabitation with an adult male and the fact that she was able to return to work when the parties' youngest child began school. We are not persuaded. Domestic Relations Law § 248 provides for discretionary modification of a maintenance award upon proof that "the wife is habitually living with another man *and* holding herself out as his wife, although not married to such man" (emphasis supplied). Both elements must be established; where, as here, only cohabitation is proven, modification is not appropriate (*see, Northrup v Northrup,* 43 NY2d 566, 571-572). As to plaintiff's return to the work force, nothing in the statute requires that maintenance terminate as soon as an ex-spouse is able to return to work. In fact, Domestic Relations Law § 236 (B) (6) (a) (4) specifically permits the court to consider "the ability of the party seeking maintenance to become self-supporting and, if applicable, the period of time and training necessary therefor". Plaintiff requested maintenance in the amount of $900 per month; Supreme Court awarded $150 per month for five years or until plaintiff remarried. Plaintiff did in fact remarry on June 4, 1999, so that defendant's challenge is limited to the period between March 1998 and June 1999. Our review of the record satisfies us that the court's award was based upon its thoughtful assessment of the parties' respective needs and resources, the impact of child support payments on each and plaintiff's plans to return to work, and was well within the broad range of its discretionary powers.

With respect to child support, however, the parties agree

that modification of Supreme Court's award is required. In calculating defendant's child support obligation, Supreme Court failed to deduct plaintiff's $150 monthly maintenance award from defendant's gross income as required by Domestic Relations Law § 240 (1-b) (b) (5) (vii) (C). Child support was awarded in the amount of $403.18 per week from March 12, 1998, based upon defendant's annual income for child support purposes of $67,629.50. Because defendant paid maintenance during the 65-week period between March 12, 1998 and June 4, 1999 (when plaintiff remarried), his adjusted gross annual income, and hence his child support obligation, for this period must be adjusted accordingly. Subtracting annual maintenance payments of $1,800 (12 months $150 per month) from defendant's annual income of $67,629.50 yields an adjusted gross annual income of $65,829.50, to which is applied the statutory support rate of 31% for four children, yielding an adjusted weekly payment of $392.45 for the period March 12, 1998 through June 4, 1999.

Defendant also challenges Supreme Court's equitable distribution award on the basis of infirmities in its valuation of the marital residence and defendant's corporation, claiming that the court failed to provide adequate reasoning to support its conclusions as to value. Again, we find defendant's contention unpersuasive. As a general proposition, we will not disturb awards of equitable distribution absent evidence that the court abused its discretion (*see, Carpenter v Carpenter*, 202 AD2d 813). No such abuse will be found where the court's determination of value is within the range of expert testimony and adequately supported by the record (*see, Matter of City of New York [Reiss]*, 55 NY2d 885, 886; *Urtis v Urtis*, 181 AD2d 1001; *Reina v Reina*, 153 AD2d 775; *Pulitzer v Pulitzer*, 134 AD2d 84).

Here, each party presented expert testimony as to the value of the properties at issue. Plaintiff's appraiser valued the marital residence at $86,000 and defendant's corporation at $142,000, while defendant's appraiser assigned values of $112,500 and $95,800, respectively. Supreme Court adopted plaintiff's valuation of both properties. As to the marital residence, the court credited plaintiff's estimate of $86,000, finding that it most accurately reflected the property's market value based on evidence of comparable sales of houses in the area. Both experts testified to the same comparable sales, but the court declined to accept the adjustments thereto advanced by defendant's expert. With respect to defendant's business, the court accepted the valuation methodology and conclusion of

plaintiff's expert. Although the court expressed frustration with its inability to articulate a comparison between the two experts' reports based on their use of disparate terminology and methodology, and noted that plaintiff's report was "less convoluted" than defendant's, we do not share defendant's view that Supreme Court thus abdicated its responsibility to independently ascertain value. Rather, we perceive the court's remarks as addressed to the vexatious situation whereby it was precluded from offering a detailed discussion of the two experts' reports, as was done with respect to valuation of the marital residence. At any rate, we are satisfied that the court's decision to credit plaintiff's expert flowed from a credibility determination within the court's broad discretion (*see, Oswald v Oswald*, 154 AD2d 817, 818-819; *see also, L'Esperance v L'Esperance*, 243 AD2d 446, 447).

Finally, although we do not disturb Supreme Court's equitable distribution determination, we agree with defendant that modification of the distributive award is required to effectuate the stated determination. The court found that plaintiff was entitled to receive 50% of all marital property except defendant's corporation, of which she was entitled to receive $33^{1}/_{3}\%$. The court determined that the value of all marital property (excluding the corporation) was $254,625, and that plaintiff's 50% share thereof totaled $127,312. Plaintiff's $33^{1}/_{3}\%$ share of the value of defendant's corporation amounted to $47,500. Plaintiff's share of all marital assets thus totaled $174,812.

The complicating factor, however, is that during the pendency of the action, defendant paid the sum of $38,611 to fully satisfy the mortgage on the marital residence. To do so, he incurred a corresponding debt on his business premises (not to be confused with his corporation). When Supreme Court calculated the total value of marital property (excluding the corporation), it applied to its determination of the market value of the marital residence ($86,000) the parties' stipulation as to the mortgage balance on that residence when the action was commenced ($38,611) to arrive at a net value for the marital residence of $47,388. It also included the parties' stipulation to the net value of the business premises as $56,922. Neither figure reflected the changes in the equity in these properties affected by defendant's postcommencement transactions, giving rise to an error when the court calculated the distributive award to which plaintiff was entitled.

Having determined that plaintiff was entitled to a total share of marital property amounting to $174,812, Supreme Court noted that she had already received $71,786 in kind, and was

thus entitled to receive a distributive award of $103,026 less $16,989, representing her share of the balance on the home mortgage which defendant paid,* or a net distributive award of $86,037. The problem is that plaintiff did not receive marital property in kind totaling $71,786, but rather $110,397 since the $38,611 mortgage debt on the marital residence had been paid in full by defendant, for which he incurred a separate debt which was not recognized anywhere in the court's calculations. Adding the net distributive award of $86,037 to the amount of property in kind received by plaintiff, she would receive a total of $196,434 rather than the $174,812 contemplated by the court. Consequently, the distributive award must be reduced to $64,415 so that, when added to the $110,397 in property plaintiff has already received, her total award will be the $174,812 to which Supreme Court determined she was entitled.

Cardona, P. J., Mercure, Yesawich Jr. and Carpinello, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as credits defendant with payment of $16,989 of the mortgage debt on the marital residence and awards $403.18 per week in child support for the period from March 12, 1998 to June 4, 1999; defendant is credited with $38,611 for payment of the marital mortgage debt and is ordered to pay child support in the amount of $392.45 per week for the period March 12, 1998 to June 4, 1999; and, as so modified, affirmed.

---

* Supreme Court determined that plaintiff was responsible for 44% of the mortgage debt rather than 50% based upon its calculation that plaintiff's total share of all marital assets, including defendant's corporation, equaled 44%.