■ Afsaneh Naimollah, Respondent, v Robert De Ugarte, Appellant. [795 NYS2d 525]—

---

Judgment, Supreme Court, New York County (Laura Drager, J.), entered on or about November 7, 2003, which, inter alia, distributed the marital property and fixed the amount and duration of maintenance, unanimously modified, on the law and the facts, to increase defendant's award from plaintiff's PaineWebber account to $138,918.61, reduce defendant's award from plaintiff's Citibank account to $3,942.25, accordingly adjust defendant's total award to $352,773.36 and his cash award to $227,773.36 (the $134,976.36 increase in the cash award to be paid in three equal installments, spaced four months apart), and otherwise affirmed, without costs.

Defendant is not entitled to 50% of the marital assets. Where the spouses' contributions to a marriage are unequal, the marital assets do not have to be divided equally (*see Arvantides v Arvantides*, 64 NY2d 1033, 1034 [1985]; *Sade v Sade*, 251 AD2d 646, 647 [1998]). Here, the trial court credited plaintiff's and the family nanny's testimony that defendant contributed little to the family, and discredited defendant's testimony about the extent of his child-care and homemaking efforts. Such credibility determinations are entitled to deference (*see Whispell v Whispell*, 144 AD2d 804 [1988]; *Havell v Islam*, 301 AD2d 339, 347 [2002], *lv denied* 100 NY2d 505 [2003]).

Defendant is correct that plaintiff's Citibank checking account should have been valued as of the date of commencement of the action. However, the value of that account on the date closest to the commencement of this action on January 3, 2002 was $15,769.01, not $47,375.96 as defendant contends. Applying the same percentage as the trial court (25%), we reduce defendant's award from the Citibank account to $3,942.25.

Even though the PaineWebber account was managed by plaintiff's broker, not by plaintiff, the capital losses therein must still be considered as active rather than passive (*see Greenwald v Greenwald*, 164 AD2d 706, 718-719 [1991], *lv denied* 78 NY2d 855 [1991]). However, the $69,420.54 passive decline in market value can be considered (*see Filkins v Filkins*, 303 AD2d 934, 935 [2003]). Defendant is correct that the trial court should not have deducted school fees from the PaineWebber account (*see Sivigny v Sivigny*, 213 AD2d 243, 245 [1995]). Because the parties filed separate tax returns from 1997 on, tax payments should not have been deducted either (*see Harmon v*

*Harmon*, 173 AD2d 98, 107-108 [1992]). The payment to the New York City Department of Finance appears to have been for plaintiff's condominium unit, not the marital co-op unit, so it too is not deductible (*cf. Chabbott v Chabbott*, 306 AD2d 368 [2003]). In sum, the portion of the PaineWebber account available for distribution is $555,674.46 ($625,095 less the passive decline of $69,420.54). Applying the same percentage as the trial court (25%), we increase defendant's award from this account to $138,918.61. In accordance with the dollar amounts and spacing contained in the judgment, the $134,976.36 increase in the cash award shall be paid in three installments of $44,992.12 each, with the first installment being due immediately, the second in four months, and the third four months after the second installment.

With respect to the Merrill Lynch account, which the trial court found was funded with money that plaintiff earned in 2001, the trial court correctly decided to award defendant no part of this account in light of his extremely limited role in the marriage in 2001 and failure to provide any significant financial resources to the marriage in 2001 (*see Sutka v Sutka*, 299 AD2d 540 [2002], *lv denied* 99 NY2d 510 [2003]).

The trial court properly applied the formula set forth in *Majauskas v Majauskas* (61 NY2d 481 [1984]) to plaintiff's Barclays 401(k). Contrary to plaintiff's testimony that she opened the account in June 1994, after the parties' 1992 marriage, her sworn net worth statements show that she opened it in 1985, which is consistent with the evidence that she started working at Barclays in July 1984. Since plaintiff testified that she contributed 12% of every paycheck and that her salary ranged between $130,000 and $160,000 from 1984 to 1999, and since the maximum allowable contribution to a 401(k) did not exceed $10,000 in those years, the trial court properly concluded that plaintiff made the maximum allowable contribution every year.

The court-appointed appraiser could consider postcommencement events that affected plaintiff's business. As defendant acknowledges, the principle that active assets are valued as of the commencement date is a helpful guidepost rather than a rigid rule (*see McSparron v McSparron*, 87 NY2d 275, 288 [1995]). Where, as here, a business suffers "losses due to adverse forces outside the spouse's control," a trial date valuation may be appropriate (*Grunfeld v Grunfeld*, 255 AD2d 12, 17 [1999], *mod on other grounds* 94 NY2d 696 [2000]). As for the amount of the valuation, no basis exists to disturb the trial court's finding that the court-appointed appraiser was more credible than

defendant's appraiser (*see Charland v Charland*, 267 AD2d 698, 700-701 [1999]; *L'Esperance v L'Esperance*, 243 AD2d 446, 447 [1997]).

Plaintiff sufficiently proved that $90,000 of the purchase price of the marital apartment came from her separate property (*see Heine v Heine*, 176 AD2d 77, 83-84 [1992], *lv denied* 80 NY2d 753 [1992]).

Defendant failed to carry his burden of demonstrating that the appreciation in plaintiff's condominium unit was in any way due to his contribution or efforts (*see Guarnier v Guarnier*, 155 AD2d 744, 745 [1989]). Even though the mortgage was paid off during the marriage, the trial court credited plaintiff's testimony that defendant contributed nothing toward this payment. In light of the parties' unequal contributions to the appreciated asset, it would be inequitable to credit defendant half of the benefit of the mortgage payment (*see Alwell v Alwell*, 98 AD2d 549, 550-551 [1984]).

The amount and duration of the maintenance award were provident exercises of discretion (*see Spencer v Spencer*, 230 AD2d 645, 648 [1996]). While the marital standard of living must be considered (*see Hartog v Hartog*, 85 NY2d 36, 50-51 [1995]), so too must the other factors listed in Domestic Relations Law § 236 (B) (6) (a) (*see id.* at 52; *Blechman v Blechman*, 234 AD2d 693, 695 [1996]). "The purpose of maintenance is to give the recipient spouse a sufficient period to become self-supporting." (*Sheila C. v Donald C.*, 5 AD3d 123, 124 [2004]). Even though he was unemployed at the time of trial, defendant should be able to find work given his skills and credentials (*see Sade*, 251 AD2d at 647). His health should not prevent him from working (*see Kurtz v Kurtz*, 1 AD3d 214, 215 [2003]). If it has deteriorated significantly since trial, such that he cannot work, he can request an upward modification of maintenance (*see* Domestic Relations Law § 236 [B] [9] [b]). In setting maintenance, the trial court could take into account defendant's imminent eligibility for full Social Security benefits (*see Whispell*, 144 AD2d at 806-807).

The award of attorneys' fees was also a provident exercise of discretion (*see DeCabrera v Cabrera-Rosete*, 70 NY2d 879, 881 [1987]). The trial court certainly was not obliged to award fees in the full amount requested by defendant's counsel (*see Feeney v Feeney*, 241 AD2d 510, 511 [1997]; *Haser v Haser*, 271 AD2d 253, 256 [2000]).

The court in a matrimonial action has the power to apportion the court-appointed appraiser's fees between the parties (*see Zirinsky v Zirinsky*, 138 AD2d 43, 45 [1988]).

We have considered defendant's remaining arguments and find them unavailing. Concur—Buckley, P.J., Andrias, Friedman, Gonzalez and Sweeny, JJ.