■ FRANK J. FLORIO, Respondent-Appellant, v LAUREL A. FLORIO, Appellant-Respondent. [809 NYS2d 231]—

Mugglin, J. Cross appeals from a judgment of the Supreme Court (Breen, J.), entered August 26, 2004 in Warren County, granting plaintiff a divorce and ordering, inter alia, equitable distribution of the parties' marital property, upon a decision of the court.

The parties were married in July 1979 and are the parents of two emancipated children. In July 2002, plaintiff commenced this action for divorce on the grounds of cruel and inhuman

treatment and constructive abandonment seeking, among other things, equitable distribution of the parties' marital property. Plaintiff apparently remained in the marital residence until November 2002 and, upon leaving, continued to pay the mortgage, taxes, home equity line of credit and certain additional expenses on the marital residence, as well as the mortgages and upkeep expenses on the three rental properties acquired by the parties during the course of their marriage.

Prior to trial, the parties stipulated as to the value of most of their marital assets but remained at odds as to, among other things, the disposition of those assets and defendant's entitlement to maintenance. By decision dated July 28, 2004, Supreme Court, inter alia, awarded plaintiff the three rental properties, with a directive that he be responsible for the mortgages and related expenses until such time as he elected to sell such properties, at which point he would be entitled to the proceeds from those sales. Supreme Court made a similar award to defendant as to the marital residence, except that defendant was directed to sell the property on or before June 30, 2005, at which time she would retain all proceeds from the sale. Each party also received his or her Roth IRA, as well as one half of their Fidelity Investments account. Defendant also received a portion of plaintiff's employee savings plan after applying a credit to plaintiff for the expenses he paid following the parties' separation. Plaintiff was directed to pay defendant maintenance in the amount of $700 per week until June 30, 2005, at which point his maintenance obligation would be reduced to $400 per week. Plaintiff further was ordered to obtain a life insurance policy in the amount of $400,000 naming defendant as a beneficiary in order to secure the maintenance award and to pay defendant's counsel fees in the amount of $7,500. The parties now cross-appeal from the judgment entered thereon.

Initially, we reject defendant's assertion that Supreme Court erred in granting plaintiff a $75,000 credit in distributing his employee savings plan. Although plaintiff's proof on this point could have been presented with greater clarity, his testimony and the documentary evidence adduced at trial were sufficient to document the various expenses he paid following his departure from the marital residence and support the monetary credit granted by Supreme Court. While defendant may find deficiencies in plaintiff's paper trail, there is no serious dispute that plaintiff paid the expenses at issue, nor is there any proof that defendant in any way contributed to such payments. Accordingly, we have no quarrel with the subject credit.

Nor do we find any error or inequity in Supreme Court's

directive that defendant sell the marital residence by a particular date. Defendant's own testimony made clear that she could not have remained in the marital residence pending trial had plaintiff not paid the mortgage thereon and the accompanying home equity line of credit and, further, that she could not afford to retain the marital residence at her current income level. Based upon our review of Supreme Court's decision, it is apparent that the court ordered that the marital residence be sold by a particular date in an effort to limit the period of time during which plaintiff was compelled to pay maintenance in the amount of $700 per week. In other words, Supreme Court was not arbitrarily removing defendant from the marital residence but, rather, was imposing a limit upon the amount of time that plaintiff would be required to fund defendant's continued occupancy thereof. Again, given defendant's candid testimony that she could not maintain the marital residence on her salary, we perceive no error in the court's directive that it be sold by a specified date.·

Nevertheless, we find inequity in Supreme Court's division of the real property and certain items of tangible personalty. Eschewing plaintiff's expressed willingness to sell these assets and divide the net proceeds, Supreme Court awarded the marital residence to defendant and the three rental properties, the all terrain vehicles, the trailer and the sailboat to plaintiff. Although Supreme Court, after allowing the $75,000 credit, essentially divided the remaining cash assets 50% to each party, the real estate was inexplicably divided 35% to defendant and 65% to plaintiff, she receiving $112,000 of net equity in the residence and he $206,295 net equity in the three rental properties. Supreme Court's only expressed rationale was that plaintiff was financially better able to maintain the rental properties until they could be sold. However, these properties were awarded, in kind, to plaintiff. The remaining tangible personalty was also awarded to plaintiff, although its value is not established by competent evidence by either party.

Although "[e]quitable distribution issues are resolved by the exercise of the court's sound discretion, guided by consideration of the statutory factors set forth in Domestic Relations Law § 236 (B) (5) (d), and need not result in an equal division of the marital property regardless of the length of the marriage" (*Lincourt v Lincourt*, 4 AD3d 666, 666-667 [2004] [citations omitted]), some semblance of parity must be achieved (*see Brough v Brough*, 285 AD2d 913, 914 [2001]). In this 25-year marriage, not only did defendant contribute financially, but Supreme Court found that she contributed as a spouse, parent

and homemaker. Under these circumstances, we find that Supreme Court abused its discretion in not dividing all assets 50% to each party. Thus, using the stipulated net values of the real estate, plaintiff owes defendant $47,147.50, plus half of the value of the sailboat, the trailer and the all terrain vehicles.

We also agree with defendant that Supreme Court erred in permitting plaintiff to keep the hot tub that he previously removed from the marital residence. As the hot tub was listed in the appraisal of the marital residence, it should have been excluded from the "personal property currently in the possession of the parties" as such asset properly belongs to defendant.

With regard to the conditions upon which Supreme Court's award of maintenance to defendant shall cease, the court's written decision provides that such award of maintenance "shall cease upon the [d]efendant's remarriage or cohabitation with an unrelated male or the death of the [p]laintiff." Defendant contends that Supreme Court erred in permitting plaintiff to terminate maintenance payments upon proof that she is cohabiting with an unrelated male as Domestic Relations Law § 248 requires, in addition to cohabitation, proof that defendant "hold[s] herself out as his wife, although not married to such man." In this regard, it is not clear whether the language employed by Supreme Court was intended to acknowledge the requirements of Domestic Relations Law § 248 or, as defendant argues, was an attempt to impose an erroneous basis upon which plaintiff's maintenance obligation could be terminated. However, as the case law on this point plainly requires that both elements of the statute be established and, further, that mere cohabitation is insufficient (*see Okvist v Contro*, 21 AD3d 1328, 1329 [2005]; *Szemansco v Szemansco*, 11 AD3d 787 [2004]; *Charland v Charland*, 267 AD2d 698 [1999]), any attempt by Supreme Court to impose a less stringent requirement clearly would be erroneous. Defendant's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Turning to plaintiff's cross appeal, we cannot say that Supreme Court erred in the amount or duration of the maintenance awarded to defendant. While it is true that defendant holds a Master's degree in elementary education and could, by her own admission, seek a better paying position, neither party presented any testimony as to the likelihood of the then 47-year-old defendant, who was earning $15,000 per year as a teacher's assistant, obtaining a full-time teaching position that would allow her to be self-supporting. Having failed to demonstrate that defendant was intentionally underemployed and/or

capable of securing a full-time position well in excess of her then current salary, and in light of the income disparity existing between the parties at the time of trial, plaintiff cannot now be heard to complain as to his maintenance obligation.

We do, however, agree that Supreme Court abused its discretion as to the award of counsel fees to defendant. Setting aside the issue of whether a hearing should have been conducted on this issue, we are of the view that defendant received sufficient assets to enable her to pay her own counsel fees. As plaintiff points out, aside from defendant's share of the liquid marital assets and the proceeds from the sale of the marital residence, defendant was to receive maintenance in the amount of $700 per week prior to the sale of the marital residence and $400 per week thereafter, in addition to her own salary ($1,200 per month), for a combined monthly income of $4,000 prior to June 30, 2005 (the designated sale date for the marital residence) and $2,800 per month thereafter. Under such circumstances, Supreme Court abused its discretion in ordering plaintiff to pay defendant's then outstanding counsel fees in the amount of $7,500—particularly in view of the fact that defendant utilized marital assets to pay her initial round of counsel fees.

Finally, Supreme Court ordered that plaintiff maintain a life insurance policy in the amount of $400,000 as security for the award of spousal maintenance—an amount that plaintiff deems excessive. Inasmuch as defendant "does not object to a declining term policy which would permit [plaintiff] to reduce the amount of insurance by the amount of maintenance actually paid provided that at all times the amount of coverage is not less than the amount of maintenance remaining unpaid" (citing *Konigsberg v Konigsberg*, 3 AD3d 330 [2004]), Supreme Court's judgment should be modified accordingly. Plaintiff's remaining contentions, to the extent not expressly addressed, have been examined and found to be lacking in merit.

Crew III, J.P., Rose, Lahtinen and Kane, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as (1) permitted plaintiff to retain the parties' hot tub, (2) ordered plaintiff to retain the all terrain vehicles, the trailer and the sailboat, (3) ordered plaintiff to pay defendant's counsel fees in the amount of $7,500, and (4) directed that plaintiff maintain a life insurance policy in the amount of $400,000; the all terrain vehicles, trailer and sailboat are ordered sold and the net proceeds equally divided between the parties, plaintiff is directed to (1) return the parties' hot tub to defendant, (2) pay defendant a distributive award of $47,147.50 on or before May 1, 2006 and (3) obtain a declining

term life insurance policy naming defendant as a beneficiary in a sum sufficient to secure his outstanding maintenance obligation, and defendant is directed to reimburse plaintiff for any portion of the $7,500 in counsel fees paid on her behalf; and, as so modified, affirmed.