■ THEODORE E. SOMERVILLE, Appellant, v HAIYAN S. SOMERVILLE, Respondent. [809 NYS2d 642]—

Crew III, J.P. Appeals (1) from an order of the Supreme Court (Connor, J.), entered August 31, 2004 in Columbia County, which granted defendant's application to hold plaintiff in contempt, and (2) from an order of said court, entered September 29, 2004 in Columbia County, granting, inter alia, defendant a divorce, upon a decision of the court.

Plaintiff met defendant, a citizen of China, through a professional dating service in 1998. The parties married in February 1999, two days after plaintiff obtained a Nevada divorce from his fourth wife. The parties' union, which produced one child,

quickly deteriorated and ultimately dissolved into the bitter and acrimonious divorce now before us.

Insofar as is relevant to the instant appeals,[1] Supreme Court, by order dated January 16, 2004, directed, among other things, that plaintiff pay "the cost of any pre-school that the infant child of the marriage shall attend after submission of an appropriate invoice or receipt for the same." Plaintiff refused to pay such expenses and, by order entered August 31, 2004, Supreme Court granted defendant's application to hold plaintiff in contempt.

The matrimonial action then proceeded to trial, with the parties having agreed to permit Supreme Court to conduct a de novo custody determination. At the conclusion thereof, Supreme Court granted defendant a divorce on the ground of cruel and inhuman treatment and directed plaintiff to pay spousal maintenance in the amount of $1,000 per month for 24 months. As to the custody and support of the minor child, Supreme Court awarded sole legal and physical custody of the child to defendant with liberal visitation to plaintiff. Plaintiff also was ordered to pay child support in the amount of $2,000 per month (including arrears), in addition to 92% of any childcare and uncovered healthcare expenses and 100% of the child's educational expenses. To secure such obligations, plaintiff was ordered to maintain a $1 million life insurance policy for the child's benefit for the duration of his support obligation. These appeals by plaintiff ensued.

Initially, we have no quarrel with Supreme Court's decision to hold plaintiff in contempt for failing to pay the child's preschool expenses. " 'To sustain a finding of civil contempt based upon a violation of a court order, it is necessary to establish that a lawful court order clearly expressing an unequivocal mandate was in effect and that the person alleged to have violated that order had actual knowledge of its terms' " (*Labanowski v Labanowski*, 4 AD3d 690, 694 [2004], quoting *Graham v Graham*, 152 AD2d 653, 654 [1989]). In our view, Supreme Court's directive in this regard was clear and unequivocal, and even a cursory review of the record makes plain that plaintiff was aware of his obligations on this point, was provided with an appropriate bill or invoice that he, in turn refused to pay, and that the child's rights were "defeated, impaired, impeded, or prejudiced" thereby (Judiciary Law § 753 [A]). Accordingly, Supreme Court's August 31, 2004 order holding plaintiff in contempt is affirmed.

As to the numerous arguments raised by plaintiff relative to

---

1. This is the parties' third appearance before this Court (5 AD3d 878 [2004]; 307 AD2d 481 [2003]).

the underlying custody and support issues, only two warrant discussion. Initially, with regard to Supreme Court's computation of plaintiff's child support obligation, we reject plaintiff's assertion that Supreme Court erred in including certain pension contributions when determining plaintiff's income. We do, however, agree, as does defendant, that Supreme Court erred in computing the amount of such income/contributions. The relevant tax documents—namely, plaintiff's 1099-R form for the years in question—identify the relevant amount as $28,615.59, not $45,946.92 as reflected in Supreme Court's decision. Utilizing this figure reduces the parties' total combined parental income to $176,097.59, 91% of which is attributable to plaintiff ($159,717.59) and 9% of which is attributable to defendant ($16,380).[2] Applying these revised percentages to the first $80,000 of combined parental income results in an annual support obligation of $12,376 for plaintiff.[3] As to the combined parental income in excess of $80,000, again utilizing the modified income figures and corresponding percentages, and taking into consideration the additional deduction made by Supreme Court, results in an annual child support obligation of $7,255.06 for plaintiff.[4] Thus, plaintiff's basic annual child support obligation under the Child Support Standards Act amounts to $19,631.06 ($12,376 + $7,255.06), which results in monthly payments of $1,635.92.[5] This sum, together with arrears in the amount of $436.89 per month, results in a total monthly support obligation for plaintiff of $2,072.81.

We also agree, as does defendant, that the $1 million life in-

---

**2.** This reduction in combined parental income and the parties' corresponding percentages thereof necessarily affects plaintiff's pro rata share of childcare expenses and the uncovered healthcare costs and expenses set forth in Supreme Court's decision.

**3.** $80,000 × 17% (rate for one child under Child Support Standards Act) = $13,600 (total support obligation on first $80,000) × 91% (plaintiff's pro rata share) = $12,376.

**4.** $176,097.59 (revised combined parental income) − $80,000 − $49,200 (other support paid by plaintiff and credited by Supreme Court) = $46,897.59 × 17% = $7,972.59 (total support obligation on income in excess of $80,000) × 91% (plaintiff's pro rata share) = $7,255.06.

**5.** Supreme Court initially found plaintiff's support obligation under the Child Support Standards Act to be $22,557.41, which it then directed be paid in monthly installments of $1,563.11. However, $22,557.41 divided by 12 equals $1,879.78 not $1,563.11. Neither party raises this apparent discrepancy in the respective briefs, and no explanation therefor appears on the face of Supreme Court's decision. We have, therefore, concluded that this merely was a mathematical error and mention this in passing only to explain why, despite having received an approximately $17,000 credit in terms of his pension contributions and a roughly $3,000 annual reduction in his child support obligation, plaintiff's monthly child support payment nonetheless increased.

surance policy intended to secure plaintiff's child support obligation should be a declining term policy that would permit plaintiff to reduce the amount of coverage by the amount of child support actually paid (*see Florio v Florio*, 25 AD3d 947, 951 [2006]). Supreme Court's order thus should be modified accordingly. Plaintiff's remaining arguments,[6] to the extent not specifically addressed, have been examined and found to be lacking in merit.

Peters, Spain and Mugglin, JJ., concur. Ordered that the order entered August 31, 2004 is affirmed, without costs. Ordered that the order entered September 29, 2004 is modified, on the law, without costs, by reversing so much thereof as found plaintiff's basic child support obligation under the Child Support Standards Act to be $22,557.41, directed plaintiff to pay 92% of any childcare expenses and uncovered healthcare expenses incurred and ordered plaintiff to maintain a $1 million life insurance policy to secure such obligation; plaintiff's basic child support obligation under the Child Support Standards Act is reduced to $19,631.06 (exclusive of arrears), plaintiff is directed to pay 91% of any childcare expenses and uncovered healthcare expenses incurred and plaintiff is permitted to obtain a declining term life insurance policy in the amount of $1 million; and, as so modified, affirmed.

---

**6.** As to the spousal maintenance issue, Supreme Court's written decision plainly reflects its rationale for awarding defendant durational maintenance and, to the extent such award conflicts with a prior finding by the court, we need note only that a motion for clarification apparently is pending before Supreme Court.