■ CARISSA WARNER, Respondent, v RICHARD HOUGHTON, Appellant. [841 NYS2d 499]—

Amended judgment of divorce, Supreme Court, New York County (Phyllis Gangel-Jacob, J.), entered December 29, 2006, unanimously modified, on the law and the facts, the monetary awards for lost opportunity of foregone earnings, equitable distribution, deficiency of assets, counsel fees and forensic accountant fees vacated, and the matter remanded for a new hearing thereon, with all discovery issues being referred to a referee for report, the vacatur conditioned on the filing by defendant's counsel of a notice of appearance within 15 days of service of a copy of this order with notice of entry, and otherwise affirmed, without costs or disbursements.

Appeal from judgment, same court and Justice, entered December 12, 2006, unanimously dismissed as academic, without costs or disbursements.

Order, same court and Justice, entered August 24, 2006, which, inter alia, precluded defendant from discovery and deemed certain financial issues resolved, unanimously modified, on the law and the facts, those provisions vacated, the motion to preclude denied, and, otherwise affirmed, without costs or disbursements.

Order, same court and Justice, entered June 7, 2006, which, inter alia, granted injunctive relief and directed payment of counsel fees, unanimously modified, on the law and the facts, the award vacated, the matter remanded for a new hearing on the merits, and otherwise affirmed, without costs or disbursements.

The parties were married on Staten Island on August 14, 1999, and thereafter returned to London, where they had met and resided prior to the wedding. In December 1999, defendant took a position with an investment bank in Hong Kong, and spent the next 18 months there. In September 2001 he transferred to a position with a bank in Singapore, and has resided there since.

Plaintiff remained employed in London until May 2001, when she returned to New York. In October 2001, she joined defendant in Singapore. The parties separated in January 2002, and plaintiff returned to New York.

By letter dated March 22, 2004, a matrimonial attorney retained by plaintiff sent defendant a summons with notice, with respect to an action commenced in Supreme Court, New York County, three days earlier, with a verified complaint alleging constructive abandonment as the grounds for divorce and an affidavit. The complaint specifically recited that equitable distribution would be sought. The letter indicated that defendant had agreed by telephone to accept service.

Defendant, without retaining his own counsel, executed an "Affidavit of Defendant in Action for Divorce" on March 29, 2004, in which he admitted to constructive abandonment, and requested service of the note of issue, request for judicial intervention, proposed findings of fact and conclusions of law, notice of settlement, and any other proposed orders, and acknowledged that he was appearing in the action. In June 2004, defendant retained new counsel, but in December his attorney advised counsel for plaintiff that he was withdrawing and that defendant would proceed pro se.

By order to show cause dated September 8, 2005, plaintiff sought, inter alia, a restraining order against defendant's Singapore bank accounts, discovery of his assets, equitable distribution of the property, counsel fees, and a judgment of divorce. On November 9 of that year, defendant, now represented by the law firm of Blank Rome, sought dismissal of the action for lack of personal jurisdiction, asserting that he was fraudulently induced into submitting to jurisdiction in New York and that plaintiff had assured him she was not seeking any division of marital assets. He filed his own petition for divorce in Singapore on November 17.

Plaintiff cross-moved to dismiss defendant's motion to dismiss, on the ground that defendant's time to make a jurisdictional objection had expired. The motions were ultimately withdrawn, and the court memorialized the withdrawal in an order entered March 22, 2006, and further directed the parties to inform Singapore counsel that settlement negotiations were pending. The parties filed statements of net worth which showed, inter alia, that defendant had 2005 income, including bonus, of $260,000, and savings of $250,000, and that plaintiff had income in 2004 of $167,000 and savings of $220,510.

On March 28, 2006, defendant discharged Blank Rome and elected to proceed pro se. On April 7, 2006 plaintiff sought, inter alia, reinstatement of her prior motion and a temporary restraining order. A hearing was held and, in view of defendant's absence, the court requested Blank Rome to appear, expressing dissatisfaction with defendant's firing of his lawyer in New York while remaining in Singapore.

The court adjourned the motion and permitted defendant to appear, on that one occasion, by telephone. Defendant told the court that when he agreed to jurisdiction in New York he was under the belief that the proceeding would be uncontested and expeditious. He claimed that he had already given plaintiff a settlement of over $100,000, and in any event had not consented to jurisdiction in New York on these issues.

The court advised him that he had, by law, consented, and then granted the relief sought. An order was entered June 7, 2006, which, inter alia, restrained defendant from disposing of any marital assets, awarded plaintiff's New York counsel $50,000 in pendente lite fees, provided for discovery, and found that New York had jurisdiction.

A compliance conference was held on July 25, 2006, at which defendant did not appear. The court granted plaintiff's request that defendant be precluded from obtaining discovery, and the matter was set down for an inquest on the issue of equitable distribution. That determination was memorialized by order entered on August 24, 2006.

At the inquest, at which defendant did not appear, plaintiff testified that she had been offered a position with the Royal Bank of Scotland at a salary of $313,000, but had turned it down to be with defendant in Singapore. The court granted a divorce on the grounds of constructive abandonment, and made awards concerning the request for equitable distribution and counsel fees.

On or about November 20, 2006, plaintiff served a proposed

judgment on defendant. A request for an adjournment by defendant's newly retained attorney was denied. Judgment was entered on December 12, and an amended judgment of divorce was thereafter entered on December 29.

Initially, plaintiff argues that the judgments of divorce are not reviewable on appeal because of defendant's various defaults. While the issue of whether the divorce was properly granted may not be reviewable, the distribution award is a separate issue, and is still subject to scrutiny, even after a default (*see e.g. Michalek v Michalek,* 180 AD2d 890 [1992]).

Defendant argues that the court did not delineate the factors it considered and its reasons for its decision in dividing the marital property. He notes that the court simply observed he had not appeared at the inquest, and granted the relief requested by plaintiff with respect to equitable distribution, except that it awarded only 50% of the amount requested "for equitable distribution of lost opportunity."

Defendant contends that the parties had comparable incomes at the times of both the marriage and the commencement of this action, that the marriage lasted less than three years, and that there were no children. Furthermore, for most of the marriage, the parties lived apart, on separate continents, and plaintiff kept all the proceeds of the sale of the flat in Wimbledon that had been purchased in her name during the marriage. As has been noted by this Court, "An insufficient explanation for the court's distribution of property requires reversal of the judgment and remand for further consideration" (*Capasso v Capasso,* 119 AD2d 268, 272 [1986]).

In this case, it seems fairly obvious that defendant's campaign of avoidance, by inter alia discharging attorneys and failing to appear on various occasions, weighed heavily in the court's decision to grant plaintiff, without specific findings, virtually everything she requested. While defendant's conduct bordered on the contemptuous, the equitable distribution award must still be justified on the record, and should be supported by specific findings. The record is barren of any such support. Thus, the equitable distribution awards must be vacated and the matter remanded for a new hearing. In view of our observation that defendant's tactics in proceeding pro se and then failing to appear contributed to the result, and also in view of the reality that he lives outside the jurisdiction, it is directed that the vacatur be conditioned upon the continued retention by defendant of New York counsel. Future discharges of counsel would be viewed as evidence of bad faith, and should be treated accordingly.

The award of $188,000 for lost opportunity earnings when plaintiff moved to Singapore was improper. The Court of Appeals has made clear that section 236 (B) (5) (e) of the Domestic Relations Law "contains no authorization for a dislocation award in lieu of earnings lost during the period of the marriage" (*Cappiello v Cappiello*, 66 NY2d 107, 109 [1985]). Where a party needs rehabilitative maintenance to improve her economic situation, an award might be warranted. Here, however, plaintiff earns a salary which is more than sufficient to provide her with a suitable standard of living. Indeed, she makes no argument in her brief that the award was legally supportable. Her only argument is that the amount claimed was accurate.

Defendant next argues that the combined award of attorneys' fees (for New York and Singapore counsel) in the amount of $252,922 was both unwarranted and excessive. Plaintiff responds that the award was justified because of defendant's obstructionist litigation tactics. While it may be that some of the award of counsel fees was justified because of defendant's tactics, the court's failure to make specific findings prevents proper review. The issue of counsel fees should be remanded for a showing of reasonableness, at least with regard to those fees incurred as a result of defendant's dilatory tactics. Except with regard to those fees incurred because of such tactics, the award of legal fees is unjustified. Courts have flexibility in assessing whether counsel fees should be awarded, and among the considerations to be factored into the equation are the financial circumstances of the parties, along with items such as the relative merits (*see DeCabrera v Cabrera-Rosete*, 70 NY2d 879, 881 [1987]). Here, as previously noted, plaintiff's annual earnings are over $150,000 per year, and there was no showing that her financial circumstances were constrained. Furthermore, although she did not earn as much as defendant, there was no substantial disparity between their individual incomes (*cf. Katzman v Katzman*, 284 AD2d 160 [2001]).

Under such circumstances, the award of attorneys' fees should be vacated in its entirety, except for those fees which can be shown to have reasonably resulted from defendant's failure to comply with court orders or, for instance, failing to appear for various proceedings. A hearing is in order to determine which fees would qualify.

Defendant next argues that the court's award of $73,715 to plaintiff as her share for the appreciation in value of a house in London he owned prior to the marriage was in error because plaintiff did not demonstrate how her efforts contributed to the increase. It is plaintiff's burden to demonstrate that her efforts

were responsible for the appreciation (*see Naimollah v De Ugarte*, 18 AD3d 268, 271 [2005]). She did testify that she spent almost every weekend for two years refinishing the house, and that it had been the marital residence. The net proceeds of the sale were $248,234, and the court awarded her half. Specific findings determining the amount of appreciation and how plaintiff's efforts contributed to the appreciation are necessary, especially since market values may have accounted for some or all of the appreciation.

In its August 24, 2006 order, the court found defendant in default due to his failure to appear at a compliance conference the previous month, and directed that the financial issues to which plaintiff had sought discovery were resolved for purposes of the action in accordance with her claims. Defendant was precluded from supporting or opposing the claims or offering evidence with respect to them.

Defendant argues that the court abused its discretion because the motion to preclude was made orally at the compliance conference, instead of on papers. Plaintiff responds, disingenuously, that the preclusion order was "a preclusion order in name only," inasmuch as it did not preclude him from presenting witnesses or cross-examining plaintiff's witnesses, and that it only deemed the issues resolved.

Understandably impatient with defendant, the court nonetheless erred in directing that he be precluded without affording him notice. Although he failed to appear at the compliance conference, and did not respond to discovery, there was no indication that a motion to preclude was imminent; defendant may have had some justifiable objections to the voluminous discovery demands served on him. Although CPLR 3126 does not specifically require that formal notice be given, this Court has found that the same due process protections afforded under CPLR 3124 (motions to compel disclosure) should also be imposed when sanctions are sought (*Postel v New York Univ. Hosp.*, 262 AD2d 40, 42 [1999]).

Notwithstanding our vacatur of the order of preclusion, since defendant was advised of the compliance conference and has not offered a valid reason for failing to appear, which, inter alia, prompted the court's ire, costs should be imposed for whatever attorneys' fees were incurred as a result of appearing at the conference, and preparation of the ensuing order.

It is further noted that the first notice to take deposition was dated June 18, 2006, and noticed defendant's deposition for July 11. The interrogatories, also dated June 18, consisted of 33 pages and 405 questions. There were also requests for 73 docu-

ments. The compliance conference was originally scheduled for July 10, and was actually held on July 25. Even if defendant had been represented by counsel throughout, it is unfathomable how he would have been able to comply with the requests, and he certainly would have been entitled to at least one adjournment of his deposition. To preclude him under such circumstances, without being given an opportunity to challenge such requests, or at least to respond to the motion, was an abuse of discretion.

Defendant argues that he was fraudulently induced into consenting to jurisdiction in New York by plaintiff's representations that this was to be merely an uncontested divorce. He further points out that the only connection of the marriage to New York was the actual ceremony, and that long-arm jurisdiction could not have been obtained under such circumstances without his consent (*see* CPLR 302 [b]). Additionally, he points out that he was not represented by counsel at the time he signed the affidavit.

Yet, as plaintiff points out, the complaint—a copy of which he acknowledged receiving—specifically demanded "Equitable Distribution of the marital property," along with a judgment of divorce on the grounds of abandonment. While the abandonment may have occurred in Singapore, and the property sought to be distributed is located there as well, the fact remains that defendant, a successful businessman, was free and financially able to engage counsel, at least to find out what equitable distribution meant.

Regardless of what defendant claims he discussed with plaintiff, the complaint sought equitable distribution. On this record, there is no fraud that would warrant removing jurisdiction from New York. And, of course, New York had subject matter jurisdiction, since the parties were married in New York and plaintiff had been residing here for one year prior to commencement of this action (*see* Domestic Relations Law § 230 [1]).

We have considered defendant's remaining arguments and find them unavailing. Concur—Saxe, J.P., Sullivan, Gonzalez, Catterson and Kavanagh, JJ.