■ KAREN L. BEAN, Respondent, v DAVID R. BEAN, Appellant. [860 NYS2d 683]—

Stein, J. Appeals (1) from an order of the Supreme Court (Teresi, J.), entered January 8, 2007 in Albany County, which, among other things, denied defendant's motion to change the valuation date of a certain asset, and (2) from a judgment of said court, entered May 2, 2007 in Albany County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court.

The parties were married in 1991. There is one child of the marriage (born in 1992).[1] Plaintiff commenced this action for divorce in December 2004. Throughout the course of the litigation, defendant continually disobeyed court mandates and failed to appear on multiple occasions. In March 2006, defendant's attorney at the time (he had several during the pendency of the action) moved, by order to show cause, to withdraw (see CPLR 321). The order to show cause contained a provision requiring defendant's personal appearance on the return date. When defendant failed to appear on that date, Supreme Court (McNamara, J.) adjourned the matter to provide him with an additional opportunity to appear, instructing defendant's attorney to notify him that, if he failed to appear, a default judgment would be entered, his answer and counterclaims would be stricken, and any issues of valuation would be as established by appropriate proof to be submitted by plaintiff. Defendant again failed to appear and his attorney made a record of the efforts made to apprise him of the consequences of such failure. As a result, the court granted counsel's motion to withdraw, struck defendant's answer and counterclaims and found defendant to be in default pursuant to 22 NYCRR 202.27.

On the eve of trial, defendant made an oral motion to change the valuation date of the parties' corporation, The Bean Agency, from the date of commencement of the action to the date of trial and requested permission to present an expert as to valua-

---

1. Pursuant to a stipulation, the parties share joint legal custody of the child, with plaintiff having primary physical custody. In addition, each party has two children from a prior marriage.

tion. Supreme Court (Teresi, J.) denied the motion in its entirety and clarified that, as a result of the prior order finding defendant to be in default, defendant would be permitted to cross-examine plaintiff's witnesses, but would not be allowed to present evidence himself. A trial was held on the issues of, among other things, equitable distribution, maintenance and child support. Subsequently, the court entered a decision and judgment of divorce, directed an equal distribution of the marital assets, and awarded nondurational maintenance in the amount of $25,000 per month and child support in the amount of $9,811 per month. Defendant now appeals from the judgment of divorce, and from the prior order of Supreme Court denying his motion to change the valuation date and for permission to present an expert at the inquest.

First, defendant contends that Supreme Court erred in valuating The Bean Agency[2] as of the date of commencement of the action instead of the date of trial. We disagree. It is well settled that "[t]he trial court has discretion and flexibility in selecting the proper date for valuing marital property" (*Sagarin v Sagarin*, 251 AD3d 396, 396 [1998]; *accord Dashnaw v Dashnaw*, 11 AD3d 732, 734 [2004]) taking into account the relevant facts and circumstances (*see Dashnaw v Dashnaw*, 11 AD3d at 734). As a general matter, courts have tended to value "active" assets—such as a business—as of the date of commencement, while valuating "passive" assets—which may change in value suddenly due to market forces—as of the date of trial (*see Fox v Fox*, 309 AD2d 1056, 1058 [2003]).

Here, Supreme Court did not abuse its discretion in valuing The Bean Agency as of the date of commencement (*see Fox v Fox*, 309 AD2d at 1058; *compare Butler v Butler*, 256 AD2d 1041, 1043-1044 [1998], *lv denied* 93 NY2d 805 [1999]) and properly determined that fixing the valuation date as of the date of trial, especially at such a late stage in the proceedings, would be prejudicial to plaintiff, as her retained expert had already valued the business as of the date of commencement. We also reject defendant's contention that the date of commencement valuation failed to account for the subsequent loss of a major contract. In determining the value of the business, plaintiff's expert took into account the agency's weaknesses, including the risk of losing a major contract, and used a conservative growth rate of 4%, notwithstanding the fact that the agency had seen an exceedingly high growth rate in the previ-

---

**2.** Although this public relations and marketing business was actually incorporated by the parties prior to the marriage, it has been treated for all purposes as a marital asset.

ous three-year period. We also note that, as a result of defendant's unilateral abandonment of the business—consistent with his threats to deprive plaintiff of the value thereof—and of his failure to comply with discovery, a date of trial valuation would have been negligible and, therefore, inequitable to plaintiff.

Supreme Court also properly denied defendant's request to present his own valuation expert with respect to The Bean Agency and other marital assets or evidence regarding the distribution of such assets. Notably, after Supreme Court found defendant to be in default and struck his answer and counterclaim, defendant moved to vacate the default. Supreme Court (McNamara, J.) denied the motion and no appeal was taken therefrom. Thus, this claim is not properly before us (*see generally Matter of Barrow v Kirksey*, 15 AD3d 801, 802 [2005], *lv denied* 5 NY3d 701 [2005]). However, were we to address the merits of defendant's argument, we would conclude that the finding of default was amply supported by the evidence that defendant received actual notice of the requirement that he appear on the order to show cause—at least once, if not twice—and that the consequences of his failure to appear were communicated to him in the manner he had directed his attorneys to do so (*see Bear, Stearns & Co., Inc. v Enviropower, LLC*, 21 AD3d 855, 856 [2005], *appeal dismissed* 6 NY3d 750 [2005]; *compare Warner v Houghton*, 43 AD3d 376, 381 [2007], *affd* 10 NY3d 913 [2008]). Such finding was also warranted by defendant's contumacious pattern of obfuscation and delay, including his history of failing to appear in court and refusing to comply with court mandates, such as support orders and disclosure requirements (*see* 22 NYCRR 202.27; *Campos v New York City Health & Hosps. Corp.*, 307 AD2d 785, 785 [2003]). Thus, Supreme Court (Teresi, J.) acted within its sound discretion to limit defendant's participation in the trial to the cross-examination of plaintiff's witnesses (*see Otto v Otto*, 150 AD2d 57, 69 [1989]). In fact, the record demonstrates that defendant actively and thoroughly cross-examined plaintiff's witnesses and introduced documentary evidence.

Turning to defendant's assertions regarding Supreme Court's adoption of plaintiff's proposed findings of fact, it is well established that the trial court must hear sufficient evidence in order to intelligently make the necessary findings and must state the reasons therefore in accordance with Domestic Relations Law § 236 (B) (*see Trim v Trim*, 21 AD3d 1203, 1204 [2005]; *Butler v Butler*, 256 AD2d at 1042; *Michalek v Michalek*, 180 AD2d 890, 891 [1992]). However, "the statutory factors do not have to be specifically cited where it is evident that the rel-

evant factors were taken into consideration by the court and the reasons for its decision are articulated" (*Butler v Butler*, 256 AD2d at 1042). Here, Supreme Court heard four days of testimony and received numerous documents into evidence. Although the court offered both parties the opportunity to submit proposed findings of fact, there is nothing in the record to indicate that defendant chose to do so. Each finding of fact marked "found" by the court cites to the record for its support. While Supreme Court did not specifically state its reasoning for an equal division of the parties' assets, it is clear from the totality of the decision that the court considered the relevant factors enumerated in Domestic Relations Law § 236 (B) (5) (d) which would warrant such a distribution of the marital assets. Similarly, Supreme Court's determination of the value of The Bean Agency was in accord with the testimony, valuation report and addendum of plaintiff's expert, and is supported by the record (*see Charland v Charland*, 267 AD2d 698, 700-701 [1999]).

However, we agree with defendant's contention that Supreme Court failed to address $1,100,000 of marital funds that plaintiff had used to purchase her current residence in accordance with a stipulation entered into between the parties on July 26, 2005. Nevertheless, while the stipulation provided that such funds were intended to be an advancement of plaintiff's share of the marital estate and that defendant would receive a credit therefor, the record also supports a finding that defendant used $600,000 in marital funds to purchase a residence in Arizona during the pendency of the action (in violation of a court order and without plaintiff's knowledge) and approximately $79,982.50 in marital funds for landscaping and interior design services, kennel expenses and gifts to his other children. Thus, those funds should be offset against the credit to which defendant is entitled, resulting in a net credit due to him in the amount of one half of the difference between the amounts advanced to each party, to wit, $210,008.75.

Turning to Supreme Court's maintenance and child support awards, we find sound and substantial support in the record for the court's determination of defendant's income. A trial court may impute income based upon past employment experience, future earning capacity, and/or the payment of personal expenses from business accounts (*see Matter of Rubley v Longworth*, 35 AD3d 1129, 1130 [2006], *lv denied* 8 NY3d 811 [2007]; *Matter of Kelly v Bovee*, 9 AD3d 641, 642 [2004]; *Matter of Brefka v Dobies*, 271 AD2d 876, 877 [2000], *lv denied* 95 NY2d 759 [2000]). Here, we decline to disturb Supreme Court's determination that defendant's annual income for purposes of calculat-

ing spousal maintenance and child support is $1 million based upon, among other things, the parties' joint income tax returns, defendant's loan application,[3] demonstrated earning potential (including consideration of his apparent decision to relinquish a lucrative position with Time, Inc.), personal expenditures and income imputed from payments of his personal expenses by and through The Bean Agency (*see Harrington v Harrington*, 6 AD3d 799, 800 [2004], *lv dismissed* 3 NY3d 738 [2004]; *Matter of Kelly v Bovee*, 9 AD3d at 642-643; *Matter of Brefka v Dobies*, 271 AD2d at 877; *see also Silverman v Silverman*, 304 AD2d 41, 50 [2003]).

With regard to the maintenance award, we also note that, in determining the amount and duration of maintenance, the trial court must consider, among other things, the predivorce standard of living (*see Hartog v Hartog*, 85 NY2d 36, 51-52 [1995]; *Carman v Carman*, 22 AD3d 1004, 1008 [2005]). A spouse's "ability to become self-supporting with respect to *some* standard of living in no way (1) obviates the need for the court to consider the predivorce standard of living; and (2) certainly does not create a per se bar to lifetime maintenance" (*Hartog v Hartog*, 85 NY2d at 52 [citation omitted]). Furthermore, the fact that a spouse will receive assets by way of equitable distribution will not bar a nondurational maintenance award (*see Kay v Kay*, 302 AD2d 711, 712 [2003]).

Here, the parties were accustomed to an extremely affluent lifestyle in that they had substantial real property holdings, enjoyed a country club membership, employed domestic help, traveled extensively and resided in a multimillion dollar mansion. In 2004, the parties' adjusted gross income for federal income tax purposes was $3,266,348. Following the commencement of this action, defendant unilaterally terminated plaintiff's employment with The Bean Agency and evinced an intent to financially strangle plaintiff and to harm her reputation, thus inhibiting her ability to be self-supporting at a level commensurate with the lavish lifestyle that she enjoyed during the marriage and that defendant has continued to enjoy. Moreover, while there was evidence of plaintiff's educational background and employment experience which would suggest an ability to become self-supporting at some level, there was no proof of the extent of her current earning ability—let alone the possibility that her income could approach the couple's multimillion dollar annual income during the marriage—or the time that would be

---

**3.** We would find Supreme Court's determination to be proper even without this disputed evidence.

necessary for her to become reasonably gainfully employed.[4] Overall, it is clear the Supreme Court considered the appropriate factors pursuant to Domestic Relations Law § 236 (B) (6) (a). Thus, we find that Supreme Court properly exercised its discretion in awarding plaintiff nondurational maintenance (see Summer v Summer, 85 NY2d 1014, 1016 [1995]; Kay v Kay, 302 AD2d at 712; see also Alvares-Correa v Alvares-Correa, 285 AD2d 123, 127 [2001], lv denied 97 NY2d 608 [2002]; Silverman v Silverman, 304 AD2d at 50-51).

However, based upon the proof adduced and the substantial award of equitable distribution to plaintiff, much of which will ultimately be received in cash capable of generating income, we find that the amount of maintenance awarded was excessive. We specifically note that the expenses claimed by plaintiff include $4,000 per month in educational expenses for plaintiff's two older children and $5,000 per month in legal fees. Even assuming that these expenses are accurate, they will not be ongoing. Likewise, inasmuch as the parties' child will turn 16 in a few months, he will presumably require less parenting, which should enable plaintiff to devote more of her energies to finding employment. On the other hand, we find that plaintiff is entitled to receive sufficient support to enable her to afford such expenses as a country club membership and gym membership that she and the child enjoyed during the marriage, but which they were forced to forgo doing the pendency of the action. Based on all the record evidence, we find that plaintiff's maintenance award should be reduced to $20,000 per month until her receipt of her share of the marital assets as set forth in the judgment of divorce and, thereafter, to $15,000 per month until her death or remarriage. Such an award "will better serve the primary goal of maintenance, which is to encourage rehabilitation and self-sufficiency to the extent possible, while still accounting for a large discrepancy in earning power between the parties" (Semans v Semans, 199 AD2d 790, 792 [1993], lv denied 83 NY2d 758 [1994]).

Considering next the child support award, we find no error in Supreme Court's determination that plaintiff had no income for child support purposes. Of particular relevance here is defendant's unilateral termination of plaintiff from her employment with The Bean Agency, together with the lack of evidence of

4. The record showed that plaintiff's experience in executive recruiting was before the parties and the child moved to New York from the west coast and that she no longer had sufficient contacts to successfully compete in that field. Similarly, plaintiff's experience in marketing was dependent upon defendant's ability to attract clients.

plaintiff's present earning ability. Furthermore, in determining the amount of child support, Supreme Court properly considered the high standard of living that the child would have enjoyed had the parties remained married, the continued high standard of living afforded the child by defendant during the pendency of the action, the income potential and earning capacity of the parties and the considerable disparity between the parties' incomes. These factors all warranted the consideration of defendant's income over the $80,000 "cap" in determining the amount of child support to be awarded.

Nevertheless, we find insufficient support in the record to justify application of the statutory child support percentage of 17% (see Domestic Relations Law § 240 [1-b] [b] [3] [i]) to the *entire* parental income over $80,000. Aside from general living expenses, there was limited evidence of the child's specific "needs," such as expenses related to his sporting activities, hobbies and education. Under all the circumstances, we find that the application of the statutory child support percentage should be limited to the first $500,000 of parental income and, therefore, that the child support award should be reduced to $7,083.33 per month.

Finally, as plaintiff concedes, Supreme Court erred in failing to direct that the life insurance policy to be maintained by defendant be a declining term policy (see *Matter of Anonymous v Anonymous*, 31 AD3d 955, 957 [2006]; *Somerville v Somerville*, 26 AD3d 647, 650 [2006], *lv dismissed and denied* 7 NY3d 859 [2006]), and the judgment shall be modified accordingly.

Cardona, P.J., Peters, Spain and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs. Ordered that the judgment is modified, on the law and the facts, without costs, by (1) directing that the life insurance policy to be maintained by defendant be a declining term life insurance policy, (2) awarding defendant a credit of $210,008.75 against the distributive award payable to plaintiff, (3) reducing the monthly child support award payable to plaintiff to $7,083.33, and (4) reducing the maintenance award to $20,000 per month until plaintiff's receipt of the distributive award and, thereafter, to $15,000 per month until plaintiff's death or remarriage; and, as so modified, affirmed.