Egan Jr., J.
 

 Appeals from a judgment and an amended judgment of the Supreme Court (O’Shea, J.), entered November 23, 2015 and October 20, 2016 in Chemung County, ordering, among other things, equitable distribution of the parties’ marital property, upon decisions of the court.
 

 Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 1989 and have one child (born in 1996). In April 2012, the husband moved out of the marital residence and the wife thereafter commenced this action for divorce. Following the wife’s motion for pendente lite support, Supreme Court issued an interim order directing the husband to pay, among other things, $7,500 per month in temporary maintenance and $1,841.66 per month in temporary child support. During the ensuing nonjury trial, the parties stipulated to numerous issues regarding equitable distribution of the marital assets and liabilities, and Supreme Court thereafter issued a decision and order, incorporating the parties’ stipulation and awarding the wife, among other things, $9,000 per month in durational maintenance for a period of 10 months, as well as $1,478.15 per month in child support. Upon application of the parties, Supreme Court issued an amended decision and order clarifying an ambiguity with regard to the duration of the maintenance award, and a judgment of divorce was entered in November 2015. Supreme Court subsequently issued an amended judgment of divorce in October 2016. The wife now appeals from both judgments.
 
 [1]
 

 Initially, the wife contends that Supreme Court erred with respect to both the amount and duration of the maintenance award, because, among other things, Supreme Court placed undue emphasis on the husband’s intent to retire when determining the award. “The amount and duration of a maintenance award are addressed to the sound discretion of the trial court, and will not be disturbed provided that the statutory factors and the parties’ predivorce standard of living are considered” (Robinson v Robinson, 133 AD3d 1185, 1186 [2015] [citation omitted]; see Domestic Relations Law § 236 [B] [former (6) (a)]; Barnhart v Barnhart, 148 AD3d 1264, 1267 [2017]).
 
 [2]
 
 “The court need not articulate every factor it considers, but it ‘must provide a reasoned analysis of the factors it ultimately relies upon in awarding maintenance’ ” (Pfister v Pfister, 146 AD3d 1135, 1137 [2017], quoting Robinson v Robinson, 133 AD3d at 1186). Upon a review of the record and Supreme Court’s written decision, it is clear that the court considered and analyzed all of the relevant statutory factors, including, among other things, the disparity in the parties’ respective incomes, their predivorce standard of living and the husband’s intent to retire following the parties’ divorce.
 

 Supreme Court recognized that the husband’s income at the time of trial, and throughout the duration of the parties’ approximately 26-year marriage, was significantly higher than the wife’s income. The husband was employed as a urologist and, in 2014, earned a gross income of approximately $497,000, which included, among other things, his base salary, a $50,000 transitional bonus, approximately $40,000 in rental income from the lease of a lithotripsy machine
 
 [3]
 
 and certain other supplemental income. The wife, on the other hand, graduated from nursing school in the 1980s and spent approximately 11 years working as an operating room nurse in Canada until such time as the parties relocated to New York in 1994. In 1996, after the birth of their child, the parties agreed that the wife would stay home to care for the child. In 2003, the wife went back to work as a nurse on a part-time basis, working one day a week at a doctor’s office through 2006 and, thereafter, worked as a basic life support instructor until 2009. The wife subsequently sustained certain orthopedic injuries to her foot, ankle and knee that required multiple surgeries and limited her ability to stand and work for extended periods of time; however, she was not rendered disabled. Upon commencement of the divorce, the wife sought to obtain another nursing position at a local hospital; however, she ultimately elected not to pursue this opportunity and, as of the time of trial, was working full time as an administrative assistant at a high school earning approximately $23,000 per year.
 
 [4]
 

 Although Supreme Court acknowledged the vast disparity in the parties’ incomes prior to the divorce, it appropriately took into consideration the fact that the husband was 65 years old as of the date of trial and, although in good health, indicated his intent to retire in early 2016 and return to Canada upon expiration of his then-current employment contract. Upon his retirement, the record reveals that the husband’s annual income stood to be significantly reduced (see Hendricks v Hendricks, 13 AD3d 928, 929 [2004]), as he did not intend on continuing to practice medicine and was not licensed to practice in Canada. Instead, the husband indicated that he intended to support himself during retirement from the proceeds of his 401(k) plan, Social Security benefits, Canadian pension and the income generated from his medical equipment lease.
 

 In fashioning its maintenance award, Supreme Court clearly recognized that, despite the husband’s impending retirement, his earning potential remained significant and, therefore, it included a provision that, upon expiration of the 10-month durational maintenance award, should the husband earn over $100,000 for any calendar year through July 2026, the wife would then be entitled to a continuing maintenance payment in the amount of $20,000 for that given year. Supreme Court also took into consideration the fact that the wife’s nursing license remained valid and that, despite her physical limitations, she was capable of obtaining more lucrative employment if she so chose. The court acknowledged that the parties’ predivorce standard of living was largely dependent on the husband’s significant earnings; however, it also considered the fact that same was also financed by credit card debt and credited the fact that the husband assumed all such credit card debt held in his name and jointly with the wife. The distributive award to the wife, meanwhile, was significant—she received, among other things, the $160,000 marital residence, the contents of the marital home worth approximately $40,000, a $10,000 motorcycle and half of the husband’s $1.2 million 401(k).
 
 [5]
 
 Upon review, therefore, we find that Supreme Court’s maintenance award struck the appropriate balance between each party’s needs, appropriately taking into consideration their ongoing ability to pay (see McCaffrey v McCaffrey, 107 AD3d 1106, 1107 [2013]; Mairs v Mairs, 61 AD3d 1204, 1208 [2009]), and we perceive no abuse of discretion in the amount or duration of the award (see Cervoni v Cervoni, 141 AD3d 918, 919-920 [2016]).
 

 With regard to the effective date of the maintenance award, however, inasmuch as the final maintenance award was greater than the temporary award fixed in the pendente lite order and as the record reflects that the wife first requested maintenance in her summons and notice—which was served on the husband on June 19, 2012—we find that she is entitled to a retroactive award of maintenance dating back to June 19, 2012 (see Domestic Relations Law § 236 [B] [former (6) (a)]; Settle v McCoy, 108 AD3d 810, 812-813 [2013]). The husband is entitled to a credit for the temporary maintenance paid pursuant to the pendente lite order and certain other voluntary payments that he made to the wife prior to entry of the interim order. To the extent that the exact amount and duration of the husband’s voluntary payments in this regard are not readily ascertainable on the record before us, however, we remit this matter to Supreme Court for a determination as to the appropriate amount of retroactive maintenance owed and the manner in which such sum shall be paid (see Domestic Relations Law § 236 [B] [former (6) (a)]; Bellizzi v Bellizzi, 107 AD3d 1361, 1364 [2013]).
 

 Turning to child support, we find no basis upon which to modify the temporary child support award. With regard to the final child support award, although the wife failed to request in her posttrial submission child support in excess of the $141,000 statutory cap in effect at the time of trial, we nevertheless find that remittal is necessary as Supreme Court failed to articulate the factors it considered in electing not to include income over the statutory cap of $141,000 in its final child support award (see Sadaghiani v Ghayoori, 83 AD3d 1309, 1312 [2011]). Further, in determining the child support award, it appears that Supreme Court deducted the husband’s maintenance payments from his income. Indeed, pursuant to Domestic Relations Law § 240 (1-b) (b) (5) (vii) (C), “durational maintenance payments may ... be deducted from a party’s gross income for child support calculations, but only if the court’s order includes an adjustment to the child support obligation upon the termination of maintenance payments” (Smith v Smith, 1 AD3d 870, 873 [2003]). Here, no provision was provided in Supreme Court’s amended decision and order for an adjustment of child support upon termination of the 10-month durational maintenance award and, therefore, it failed to articulate its basis for deducting maintenance from the husband’s income in determining the appropriate amount of child support (see Domestic Relations Law § 240 [1-b] [b] [5] [vii] [C]). To the extent that the failure to include such an adjustment was an oversight, remittal is necessary to allow Supreme Court to include such a provision if that was its original intent (see Smith v Smith, 1 AD3d at 873). We also agree with the wife that the husband’s child support obligation should have been made retroactive to June 19, 2012, the date the wife made such demand in her summons with notice (see Domestic Relations Law § 236 [B] [7] [a]; Smith v Smith, 116 AD3d 1139, 1142 [2014]; Vertucci v Vertucci, 103 AD3d 999, 1006 [2013]).
 

 Next, Supreme Court did not abuse its discretion in declining to direct the husband to name the wife as sole and irrevocable beneficiary of the husband’s life insurance policies in order to secure his outstanding maintenance and child support obligations (see Domestic Relations Law § 236 [B] [8] [a]; Murray v Murray, 101 AD3d 1320, 1325 [2012], lv dismissed 20 NY3d 1085 [2013]). Indeed, a trial court may, in its discretion, direct a spouse to purchase life insurance to secure payments for the maintenance and support of a dependent spouse or unemancipated child (see Hartog v Hartog, 85 NY2d 36, 50 [1995]; Murray v Murray, 101 AD3d at 1325). Here, although the husband acknowledged at trial that he had removed the wife as the named beneficiary on his life insurance policies, the wife remained the sole beneficiary of his 401(k). Accordingly, insofar as the wife’s maintenance and child support awards were adequately secured by the husband’s 401(k) plan and, in consideration of the substantial distributive award that she otherwise received, Supreme Court did not abuse its discretion in declining to direct the husband to maintain a separate life insurance policy in her favor for such purposes (see Bellizzi v Bellizzi, 107 AD3d at 1364).
 

 Nor do we find persuasive the wife’s contention that Supreme Court should have directed the husband to pay 100% of the child’s college expenses. To the extent that the child was in college at the time of trial and Supreme Court specifically linked the husband’s obligation to pay 75% of the child’s college expenses to the duration of the child support award—increasing such obligation to 100% upon expiration of the child support award—we find no abuse of discretion by Supreme Court in allocating to the husband 75% of the child’s college expenses during the time that he was concomitantly obligated to pay child support (see Matter of Heinlein v Kuzemka, 49 AD3d 996, 998 [2008]).
 
 [6]
 
 Lastly, to the extent that the wife failed to request a share of the husband’s frequent flier miles in her posttrial submission to Supreme Court and insofar as Domestic Relations Law § 236 (B) (5) (d) does not require the equitable distribution award to be equal (see Smith v Smith, 152 AD3d 847, 848 [2017]; Funaro v Funaro, 141 AD3d 893, 896 [2016]), we find no abuse of discretion in Supreme Court declining to award her half of the parties’ frequent flier miles, particularly in light of the substantial other assets that the wife received as part of the distributive award (cf. Fisher v Fisher, 122 AD3d 1032, 1033 [2014]; compare Hale v Hale, 16 AD3d 231, 235 [2005]).
 

 McCarthy, J.P., Lynch, Rose and Rumsey, JJ., concur.
 

 Ordered that the appeal from the judgment entered November 23, 2015 is dismissed, without costs. Ordered that the amended judgment entered October 20, 2016 is modified, on the law and the facts, without costs, by reversing so much thereof as fixed defendant’s child support obligation and failed to award plaintiff retroactive maintenance; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court’s decision; and, as so modified, affirmed.
 

 [1]
 

 . Inasmuch as Supreme Court’s November 2015 judgment of divorce was superseded by Supreme Court’s October 2016 amended judgment of divorce, the appeal from the November 2015 judgment of divorce must be dismissed (cf. Matter of Kareem Q., 151 AD3d 1321, 1322 [2017]; Holtzman v Holtzman, 202 AD2d 913, 913 [1994]).
 

 [2]
 

 . As the wife commenced this divorce action in June 2012, the former provisions of Domestic Relations Law § 236 (B) (6) were in effect at such time and, therefore, govern the instant appeal (see Sprole v Sprole, 145 AD3d 1367, 1368-1369 [2016]).
 

 [3]
 

 . A lithotripsy machine is a medical device commonly used to fragment or pulverize kidney stones utilizing ultrasonic shock waves.
 

 [4]
 

 . The wife’s 2014 W-2 form indicated that she earned $20,087.27 for the subject tax year.
 

 [5]
 

 . Notably, the maintenance award terminates only after the balance of the mortgage and home equity loan are paid in full; as such, the wife will effectively obtain the marital residence free from any encumbrances.
 

 [6]
 

 . In her posttrial submission, the wife did not request, as she does now, that the husband be 100% responsible for the child’s college expenses, having requested that he only be responsible for 80% of such expenses. Moreover, the child’s first year tuition and fees were paid in full from a college savings account that the parties had created during their marriage.