Garry, J.
 

 Appeal from a judgment of the Supreme Court (Reynolds-Fitzgerald, J.), entered September 16, 2016 in Broome County, ordering, among other things, equitable distribution of the parties’ marital property, upon a decision of the court.
 

 Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 1981 and have two adult children. After the marriage, the husband managed and operated various stores for a large farm and garden chain in New England and New York until 2000, when the parties purchased one of these stores, located in Broome County. The husband operated the store and managed the underlying business, but the parties shared equal ownership and received separate weekly draws. The wife had been employed as a registered nurse, but stopped working in paid employment in 2001. The parties’ sole source of income thereafter was the store, which prospered and permitted them to enjoy a comfortable lifestyle and accumulate substantial assets.
 

 They separated in March 2011, and the wife commenced this divorce action in August 2013. Before trial, the parties stipulated that the total value of their marital assets was well over two million dollars, including an agreed-upon value for the store as their primary asset and individual values for the marital residence in New York, a second home in California and such other resources as bank accounts and retirement funds. The parties further agreed that the store property should be sold, that the New York residence should be awarded to the husband and that the California home—where the wife had been residing since the parties’ separation—should be awarded to her. After a bench trial on the issues of equitable distribution and maintenance, Supreme Court ordered the store to be sold and directed the net proceeds of the sale to be divided equally between the parties. The court awarded the residences to the parties as requested and used offsets and credits to result in a virtually equal distribution of the remaining assets.
 
 [1]
 
 The court directed that the wife’s existing draw from the store continue pending the sale, but declined to award maintenance to her thereafter. The wife appeals.
 

 The sole contention upon appeal is that Supreme Court erred in failing to make a maintenance award. The court found that it would be impermissible to base such an award on the income produced by the store, as the proceeds of the court-ordered sale were to be equitably distributed between the parties. We agree with the wife that such an award was not legally precluded. Nonetheless, in the circumstances presented, this income should not provide the basis for a maintenance award. Unlike income derived from an intangible asset such as a professional license, income produced by a tangible asset such as the store may be the basis of a maintenance award when that income will continue to flow to a spouse, even though the underlying income-producing asset has been distributed as marital property (see Keane v Keane, 8 NY3d 115, 121-122 [2006]; compare Grunfeld v Grunfeld, 94 NY2d 696, 705 [2000]; Gifford v Gifford, 132 AD3d 1123, 1124-1125 [2015]; Noble v Noble, 78 AD3d 1386, 1389-1390 [2010]). Here, however, neither party will receive income from the store after it is sold. Further, although a maintenance award may be premised upon imputed income or other such resources in appropriate circumstances, such a determination must be based upon supporting evidence in the record (see e.g. Barnhart v Barnhart, 148 AD3d 1264, 1267-1268 [2017]). Upon our independent consideration of the record evidence in light of the pertinent statutory factors
 
 [2]
 
 (see Domestic Relations Law § 236 [B] [former (6) (a)]; Arthur v Arthur, 148 AD3d 1254, 1258 [2017]; Funaro v Funaro, 141 AD3d 893, 898 [2016]), we find that the judgment should be affirmed.
 
 [3]
 

 At the time of trial, the parties’ ownership of the store, which had provided their only income and the husband’s only employment for more than a decade, was about to come to an end. The wife was 59 years old and the husband was 60 years old; neither had specific employment plans, and each had limited prospects for significant career development, education or training before reaching retirement age. As to earning capacity, the husband, who had a high school education, had been employed in the operation and ownership of farm and garden stores throughout the marriage. There was no evidence that he had any other significant work experience, licensing or training. He testified that he did not plan to return to store management, wished to retire and anticipated that any work he undertook would be at a minimum-wage level. He further testified that the economics of owning and operating a farm and garden store made it unlikely that the buyer of such a store would hire someone else to operate it. The wife presented no evidence that contradicted this assertion, nor did she establish that the husband was capable of securing other employment that would earn an income comparable to that produced by the store. She did not submit evidence of available work opportunities in store management or other appropriate fields or of the income the husband might expect to earn in such employment, nor does the record include any evidence of the general earning potential of persons of the husband’s age, education and work experience (see Florio v Florio, 25 AD3d 947, 950-951 [2006]). On this record, it would be speculative to impute significant income to the husband or to determine his earning capacity (see Matter of D'Andrea v Prevost, 128 AD3d 1166, 1168 [2015]; McAuliffe v McAuliffe, 70 AD3d 1129, 1133 [2010]; Matter of Bianchi v Breakell, 23 AD3d 947, 949 [2005]; compare Barnhart v Barnhart, 148 AD3d at 1267-1268).
 

 The evidence did not establish that the wife had a lower earning capacity than that of the husband or that she was unable to support herself. She testified that her work opportunities had been limited early in the marriage because the husband’s career required frequent relocations. Later in the marriage, she became licensed as a registered nurse and worked in that capacity from 1994 until she left paid employment. At the time of trial, she held nursing licenses in New York and in California, where she intended to reside. Although the wife had not worked as a registered nurse for more than a decade at the time of trial, the record reveals that this period of unemployment took place after the parties’ children reached adulthood and did not represent a sacrifice of the wife’s career opportunities while she “made substantial noneconomic contributions to the household or to the [husband’s] career” (Ndulo v Ndulo, 66 AD3d 1263, 1265 [2009]; see Cornish v Eraca-Cornish, 107 AD3d 1322, 1325 [2013]). Rather, the wife testified that she chose to leave paid employment for tax-related reasons and that she worked thereafter in volunteer positions for a charity and a botanical garden.
 
 [4]
 
 The wife testified that she expected that returning to the work force after this interruption would be difficult, but acknowledged that she had not yet made any efforts to find employment at the time of trial. Thus, she did not demonstrate that a significant disparity existed between the husband’s future earning potential and her own (compare Gifford v Gifford, 132 AD3d at 1125).
 

 Significantly, the parties’ other financial resources are substantial. Each received a distributive award of liquid and nonliquid assets worth more than a million dollars. As the amounts of these awards are equal and neither party owns separate property, the husband and the wife are equally able to use the distributed assets to supplement their incomes, fund their retirements and, as far as possible, sustain the comfortable standard of living that they enjoyed before the divorce (see Suydam v Suydam, 203 AD2d 806, 811 [1994], lv dismissed 84 NY2d 923 [1994]; compare Redgrave v Redgrave, 13 AD3d 1015, 1019 [2004]). In view of these circumstances, the similarity in the parties’ ages and health, and the absence of any demonstrated disparity in their employment prospects and earning capacities, we perceive no basis for a modification of the maintenance determination.
 

 Peters, P.J., Devine, Clark and Aarons, JJ., concur.
 

 Ordered that the judgment is affirmed, without costs.
 

 [1]
 

 . Supreme Court permitted the wife to retain her jewelry and mink coat with no corresponding adjustment for the husband, finding that no evidence setting the value of these items had been introduced at trial.
 

 [2]
 

 . This action was commenced before the 2015 statutory amendments (see L 2015, ch 269, § 4).
 

 [3]
 

 . “[T]his Court’s authority is as broad as Supreme Court’s in resolving questions of maintenance” (McCaffrey v McCaffrey, 107 AD3d 1106, 1108 [2013] [internal quotation marks and citations omitted]; accord Fisher v Fisher, 122 AD3d 1032, 1033 n 2 [2014]).
 

 [4]
 

 . Both parties testified that the wife briefly worked in the parties’ store after leaving paid employment, but stopped after only a few weeks because of conflict between the parties. The wife stated that after she was “fired” by the husband, she elected not to seek other paid employment.