Bell-Vesely v Vesely (2020 NY Slip Op 01415)





Bell-Vesely v Vesely


2020 NY Slip Op 01415


Decided on February 27, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 27, 2020

528082

[*1]Lori Ann Bell-Vesely, Appellant,
v
Mark J. Vesely Sr., Respondent.

Calendar Date: January 13, 2020

Before: Egan Jr., J.P., Lynch, Devine, Aarons and Reynolds Fitzgerald, JJ.


Larkin, Ingrassia & Tepermayster, LLP, Newburgh (William J. Larkin III of counsel), for appellant.
Blatchly & Simonson, PC, New Paltz (Jon Simonson of counsel), for respondent.



Lynch, J.
Appeal from a judgment of the Supreme Court (McNally Jr., J.), entered October 18, 2018 in Ulster County, ordering, among other things, equitable distribution of the parties' marital property and child support, upon a decision of the court.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 1996 and are the parents of a son (born in 1994) and a daughter (born in 1999). In July 2016, the wife commenced this action for divorce. Following a bench trial, Supreme Court granted a judgment of divorce, which, among other things, equally divided certain marital property and directed the husband to pay maintenance to the wife in the amount of $164.86 per month for seven years and child support for the daughter in the amount of $614.66 per month based on his imputed income of $49,000. The court also declined to award the wife additional counsel fees and determined that the sum remaining in the husband's Wells Fargo brokerage account was separate property not subject to equitable distribution. The wife appeals.
First, we reject the wife's contention that Supreme Court abused its discretion in determining the husband's income for purposes of calculating spousal maintenance and child support. "A par[ty]'s child support [or spousal maintenance] obligation is determined by his or her ability to provide support, rather than the par[ty]'s current financial situation" (Johnson v Johnson, 172 AD3d 1654, 1656 [2019] [internal quotation marks and citations omitted]; see Matter of D'Andrea v Prevost, 128 AD3d 1166, 1167 [2015]). "Because imputed income more accurately reflects a party's earning capacity and, presumably, his or her ability to pay, it may be attributed to a party as long as the court articulates the basis for imputation and the record evidence supports the calculations" (Mack v Mack, 169 AD3d 1214, 1217 [2019] [internal quotation marks and citations omitted]; see Matter of Curley v Klausen, 110 AD3d 1156, 1159 [2013]). In determining a party's child support or spousal maintenance obligation, a court may exercise its discretion by imputing income "where there is clear and undisputed evidence of a party's actual income during the pendency of the proceeding" (Johnson v Johnson, 172 AD3d at 1656).
Here, the record supports Supreme Court's determination that the husband's actual income in 2016 was $49,000, notwithstanding the fact that his 2016 W-2 form reported income of approximately $91,000. The discrepancy pertains to a lump-sum loan/bonus payment of $350,000 that the husband received up front in January 2012 when he began his employment with Wells Fargo Advisors, LLC. The husband was required to sign a promissory note requiring repayment of the loan/bonus in the event that his employment ended within a defined time period.[FN1] Accounting for this payment, the husband's manager testified, and the husband confirmed, that the husband's 2016 W-2 form reflected his commission of $49,000, plus a proportionate amount of the loan/bonus that the husband received in 2012. If the husband remained an employee in good standing, instead of collecting the debt, his employer would give the husband a bonus credit in the amount that he owed — effectively offsetting the debt. The husband paid income taxes on the loan/bonus amount each year. Based on the foregoing, and deferring to the court's credibility determinations, we find that there is no basis to disturb the court's imputation of $49,000 of income to the husband (see Johnson v Johnson, 172 AD3d at 1656; Seale v Seale, 149 AD3d 1164, 1170 [2017]).
The wife further contends that Supreme Court erred in characterizing the husband's Wells Fargo brokerage account as separate property. The record shows that this account was funded through the loan/bonus amount that the husband received in 2012 and contained approximately $23,000 at the time of trial. Because these funds were received during the marriage, we agree with the wife that the funds constitute marital property (see Domestic Relations Law § 236 [B] [1] [c]; Fields v Fields, 15 NY3d 158, 163 [2010]; Keil v Keil, 85 AD3d 1233, 1234 [2011]). However, here, the nuance is that the funds came with a hitch; the loan/bonus would proportionately transform into a debt in the event that the husband left his employment prior to December 2021. Given this circumstance, and the fact that the husband continues to pay the income tax due on the loan/bonus, we conclude that the husband is entitled to retain the funds in the brokerage account as part of the equitable distribution of the marital assets.
As to the duration of the maintenance award, we reject the wife's contention that Supreme Court erred in determining the duration of maintenance to be seven, instead of eight, years. The husband's seven-year term is presumably based on the formula for postdivorce maintenance set forth in Domestic Relations Law § 236 (B) (6) (f). Under that formula, where, as here, the parties are married for 20 years, the duration can be set at between 30-40% of the term — which would allow a maximum duration of eight years. However, the duration of a maintenance award pursuant to this formula is discretionary, "and the award will not be disturbed so long as the statutory factors and the parties' predivorce standard of living were properly considered" (Pfister v Pfister, 146 AD3d 1135, 1137 [2017] [internal quotation marks and citations omitted]; see Stuart v Stuart, 155 AD3d 1371, 1372 [2017]). Here, the seven-year award falls within the statutory range, and our review of the record reflects that the court considered relevant statutory factors, including the earning capacity and the standard of living of the parties (see Domestic Relations Law § 236 [B] [6] [f]). Thus, we find no basis to disturb the court's determination (see Stuart v Stuart, 155 AD3d at 1372).
Next, the wife contends that the Supreme Court should have ordered the husband to pay a pro rata share of the daughter's college costs. Although the court made no determination related to the daughter's college costs, the record is sufficiently well developed to permit us to exercise our independent authority to review the evidence on this issue (see Murray v Murray, 101 AD3d 1320, 1325 [2012], lv dismissed 20 NY3d 1085 [2013]). "Generally, where, as here, the parties did not enter a voluntary agreement to provide for a child's college education, a parent may be required to make payments for a child's college education if special circumstances are found to exist" (Wallace v Wallace, 154 AD3d 1078, 1079 [2017] [internal quotation marks and citations omitted]; see Domestic Relations Law § 240 [1-b] [c] [7]). "Key factors to consider in determining whether a parent should be required to contribute to a child's college education include the child's academic ability, the parents' educational background and the ability to pay" (Matter of Orlowski v Gialanella, 163 AD3d 1368, 1369 [2018] [internal quotation marks and citations omitted]). The wife testified that the daughter was enrolled as a senior at a high school with an individualized education program. However, the wife provided no testimony as to the daughter's intention to enroll in college or her college-related expenses. Under these circumstances, we find no exceptional circumstances warranting the award of college costs (see Morille-Hinds v Hinds, 169 AD3d 896, 900 [2019]; Wallace v Wallace, 154 AD3d at 1079-1080).
We also find unavailing the wife's contention that Supreme Court abused its discretion in not directing the husband to name the wife or the daughter as beneficiaries of his life insurance. A "court may, in its discretion, direct a spouse to purchase life insurance to secure payments for the maintenance and support of a dependent spouse or unemancipated child" (Stuart v Stuart, 155 AD3d at 1375; see Domestic Relations Law § 236 [B] [8] [a]; Murray v Murray, 101 AD3d at 1325). Here, the husband's testimony indicated that he had already procured a life insurance policy for the benefit of the daughter (see Zwickel v Szajer, 47 AD3d 1157, 1158 [2008]). Further, considering the wife's distributive award, including her award of half of the balance of the husband's 401(k) plans, we find that the court did not abuse its discretion in failing to direct the husband to maintain life insurance for the benefit of the wife (see Stuart v Stuart, 155 AD3d at 1377; Grenier v Grenier, 210 AD2d 557, 559 [1994]).
However, we do agree with the wife that Supreme Court erred in not ordering the husband to maintain the daughter's health insurance or to pay his share of the daughter's uninsured medical expenses. "Where the child is presently covered by health insurance benefits, the court shall direct in the order of support that such coverage be maintained" (Domestic Relations Law § 240 [c] [1]). Generally, "[i]f the non-custodial parent is ordered to provide such benefits, the custodial parent's pro rata share of such costs shall be deducted from the basic support obligation" (Domestic Relations Law § 240 [1-b] [c] [5] [ii]). Further, "the court shall pro rate each parent's share of reasonable health care expenses not reimbursed or paid by insurance . . . in the same proportion as each parent's income is to the combined parental income" (Domestic Relations Law § 240 [1—b] [c] [5] [v]). Here, the husband testified that he carried and intended to maintain health insurance for the daughter. Thus, the court erred when it did not order the husband to maintain health insurance for her (see Domestic Relations Law § 240 [c] [1]; Ball v Ball, 150 AD3d 1566, 1570 [2017]). In addition, the wife's pro rata share of the cost of such health insurance, which is 41%, should be deducted from the basic child support obligation (see Domestic Relations Law § 240 [1-b] [c] [5] [ii]). As for the daughter's uninsured medical expenses, the husband and the wife shall pay their pro rata share thereof, 59% and 41%, respectively.
Finally, the wife contends that Supreme Court erred when it did not award her additional counsel fees. " When exercising its discretionary powers in this regard, a court should review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relative merit of the parties' positions as well as the complexity of the case and the extent of legal services rendered" (Gordon-Medley v Medley, 160 AD3d 1146, 1148 [2018] [internal quotation marks and citations omitted]). "There [is] a rebuttable presumption that counsel fees shall be awarded to the less monied spouse" (Domestic Relations Law § 237 [a]; see Button v Button, 165 AD3d 1528, 1534 [2018]). In light of the financial circumstances of the parties, the award of maintenance and the distribution of marital property made herein, we find that the court properly exercised its discretion in limiting the husband's contribution towards the wife's counsel fees to the interim counsel fee award of $6,250 (see Murphy v Murphy, 125 AD3d 1265, 1267 [2015]; Ansour v Ansour, 61 AD3d 536, 537 [2009]). The wife's remaining contentions, to the extent that they are not addressed here, have been considered and found to be lacking in merit.
Egan Jr., J.P., Devine, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by (1) directing defendant to maintain the daughter's health insurance, with plaintiff's pro rata share thereof to be deducted from the basic child support obligation, and (2) directing plaintiff and defendant to each pay their pro rata share of any of the daughter's uninsured health care expenses, and, as so modified, affirmed.



Footnotes

Footnote 1: The husband also signed a second promissory note in April 2013 in the amount of $76,209.