DeCrescenzo v Suslak (2025 NY Slip Op 03114)

DeCrescenzo v Suslak

2025 NY Slip Op 03114

Decided on May 22, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 22, 2025

CV-24-0444
[*1]Nicole DeCrescenzo, Respondent,
v
Adam G. Suslak, Appellant.

Calendar Date:February 10, 2025

Before:Aarons, J.P., Pritzker, Reynolds Fitzgerald, Ceresia and Powers, JJ.

Assaf & Siegal PLLC, Albany (David M. Siegal of counsel), for appellant.
The Powers Firm, PLLC, Albany (Elise C. Powers of counsel), for respondent.

Aarons, J.P.
Appeals (1) from an order of the Supreme Court (Kimberly O'Connor, J.), entered February 23, 2024 in Albany County, directing, among other things, equitable distribution of the parties' marital property, and (2) from the judgment entered thereon.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 2010 and have three children (born in 2013, 2016 and 2018). The wife commenced this divorce action in June 2021 seeking custody of the children, spousal maintenance, child support and other relief; the husband joined issue and counterclaimed for divorce and similar relief. The parties thereafter agreed to joint legal and shared physical custody of the children and resolved most issues of equitable distribution. The parties also stipulated to, among other things, the fair market value of their marital residence and their secondary residence (hereinafter the lake house) and their respective incomes in 2021. Following trial and posttrial submissions, Supreme Court, in a February 2024 order, granted the divorce, distributed the marital residence to the husband and the lake house to the wife, and awarded the wife $5,000 per month in spousal maintenance, $13,657 per month in child support and $100,000 in counsel fees. The court also granted the wife's November 2022 motion to hold the husband in contempt, finding the husband committed five violations of its various orders and fined him $250 for each act. The court's February 2024 order was incorporated into the April 2024 final judgment of divorce. From both the order and the judgment, the husband appeals.[FN1]
First, Supreme Court's distribution of the lake house to the wife and the marital residence to the husband is in accord with the parties' preferences and the requisite statutory factors (see Domestic Relations Law § 236 [B] [5] [d]). Each of those properties carries a mortgage, and the lake house has substantially more equity and concomitantly less outstanding debt than the marital residence.[FN2] The court declined to equalize the award of equity and instead awarded all of the equity in each property to the relevant party. As a result, the wife received 71% of the total equity in both properties, and 29% went to the husband. Despite the husband's protests, "there is no requirement that the distribution of each item of marital property be on an equal or 50-50 basis" (Arvantides v Arvantides, 64 NY2d 1033, 1034 [1985]), and the court's determination is appropriately based upon, among other things, the parties' respective present and future financial circumstances, the disparity in the parties' incomes and earning potentials and the totality of the distribution of marital assets among the parties, including the wife's equitable share of the husband's medical practice. "In light of the court's consideration of the appropriate factors, and given the substantial discretion involved in determining the manner in which to divide marital assets, we find no abuse of discretion upon which [*2]to disturb this equitable distribution award" (Breen v Breen, 222 AD3d 1202, 1207 [3d Dept 2023] [citations omitted]).
The husband contends that Supreme Court should have reimbursed him for the mortgages, taxes and insurance on both the marital residence and the lake house. We are not persuaded. Generally, a divorcing party who uses separate funds to pay down marital debt during the pendency of an action is entitled to a 50% credit, representing the amount paid on the other party's behalf (see Belkhir v Amrane-Belkhir, 118 AD3d 1396, 1397 [4th Dept 2014]). In our view, the court acted within its discretion in declining to apply that rule in light of the ultimate award of equity in both properties, the totality of the equitable distribution award, the parties' pretrial agreement stipulating to shared use of the two properties for their nesting periods, the absence of any award of temporary or retroactive child support or spousal maintenance, and the court's denial of the wife's request for a credit based upon the husband's use of marital funds to pay the costs of a condominium that was his separate property (compare Rouis v Rouis, 156 AD3d 1198, 1200-1202 [3d Dept 2017]; Biagiotti v Biagiotti, 97 AD3d 941, 943 [3d Dept 2012]).
In calculating spousal maintenance and child support, Supreme Court declined to impute to the wife — a part-time licensed physical therapist with a master's degree in that field — a full-time annual income of $95,870 rather than her stipulated 2021 income of $12,015. The husband — a full-time surgeon and partner in a medical practice with a gross 2021 income of $949,712 — asserts that this omission is an abuse of discretion. We disagree.
"A parent's child support obligation is determined by his or her ability to provide support, rather than the parent's current financial situation" (Mack v Mack, 169 AD3d 1214, 1217 [3d Dept 2019] [internal quotation marks, brackets and citations omitted]). To be sure, "in determining a party's child support or spousal maintenance obligation, a court need not rely upon a party's own account of his or her finances, but may exercise its discretion by imputing income based upon such factors as the party's education, qualifications, employment history, past income, and demonstrated earning potential" (Carney v Carney, 160 AD3d 218, 227 [4th Dept 2018] [internal quotation marks and citation omitted]; accord Hughes v Hughes, 198 AD3d 1170, 1173 [3d Dept 2021]; see Gardner v Gardner, 228 AD3d 1074, 1075 [3d Dept 2024]).
Initially, the wife left the full-time workforce during the marriage to focus on raising the parties' children and returned to part-time work to maintain a professional life while allowing her to continue as the children's primary caregiver. Thus, the wife did not deliberately reduce her income to avoid a support obligation (see Spencer v Spencer, 298 AD2d 680, 681 [3d Dept 2002]; Cardia v Cardia, 203 AD2d 650, 651 [3d Dept 1994]), nor is there evidence that the wife misrepresented [*3]her 2021 income (see Pfister v Pfister, 146 AD3d 1135, 1136-1137 [3d Dept 2017]; Sharlow v Sharlow, 77 AD3d 1430, 1431 [4th Dept 2010]). Even though Supreme Court could have imputed income to the wife even in the absence of those conditions, "it was not required to do so" (Matter of Remsen v Remsen, 198 AD3d 658, 661 [2d Dept 2021]; see Harris v Schreibman, 200 AD3d 1117, 1121 n 3 [3d Dept 2021]; Belkhir v Amrane-Belkhir, 118 AD3d at 1398).
Supreme Court's decision not to impute income has a substantial basis in the record. The wife testified that her childcare and household responsibilities — including attending and supporting the children's activities in and outside of school — made full-time employment impossible even after divorce (compare Hughes v Hughes, 198 AD3d at 1173; Matter of Curley v Klausen, 110 AD3d 1156, 1159 [3d Dept 2013]). The court credited the wife's testimony and rejected the estimated full-time salary of $95,870 proffered by the husband's vocational expert, who did not provide credible evidence of a local, available position with a comparable salary for which the wife was qualified. We accord great deference to a trial court's credibility determinations respecting the imputation of income (see McGovern v McGovern, 218 AD3d 1067, 1069 [3d Dept 2023]; see also Matter of Treglia v Varano, 222 AD3d 1299, 1302 [3d Dept 2023]), and our review of the record yields no reason to do otherwise here. Insofar as "the record demonstrates that [the wife's] part-time work schedule was initially agreed to by the parties and continued for the benefit of the children," we cannot say "that Supreme Court should have imputed a higher income to [her]" (Hammack v Hammack, 20 AD3d 700, 705 [3d Dept 2005], lv dismissed 6 NY3d 807 [2006]).
Supreme Court also acted within its discretion in declining to impute investment income to the wife. Rather than rely on an expert, the husband used his own investment experience to assert that the wife would make an annual return of $52,532 if she conservatively invested her distributive award. At the time of trial, however, she had spent down a portion of the distributive award on divorce-related expenses and placed the rest of the award in an account with a financial planner, where it remained uninvested (compare Hofmann v Hofmann, 173 AD3d 531, 532-533 [1st Dept 2019] [maintenance not awarded based on distributive share of income-generating investments]). The wife testified she may use her award to purchase a home in the children's school district in the event the husband was awarded the marital residence — which he was — but had not yet consulted her financial planner. On this record, we find no basis to disturb the court's conclusion that the investment income advanced by the husband was too speculative for imputation (see Tuchman v Tuchman, 201 AD3d 986, 991 [2d Dept 2022]; Reynolds v Reynolds, 155 AD3d 1421, 1423 [3d Dept 2017]).
Next, Supreme Court appropriately considered the wife's reasonable needs and [*4]predivorce standard of living in the context of the other statutory factors in awarding her $5,000 per month in maintenance, consisting of the presumptive award of $3,133.02 per month plus an additional $1,866.98 per month (see Domestic Relations Law § 236 [B] [6] [d] [2]; [e] [1]; Lisowski v Lisowski, 218 AD3d at 1215-1216 [4th Dept 2023]; Sharlow v Sharlow, 77 AD3d at 1431-1432). In making that additional maintenance award, the court emphasized (1) the wife's ongoing role as the children's primary caregiver; (2) the significant disparity in the parties' respective present, actual incomes and their future incomes, which disparity would remain and continue to grow wider even if the wife took a full-time position in her field; (3) the wife's loss of access to the husband's health insurance plan; and (4) the more-than-modest lifestyle established during the marriage (compare Hammack v Hammack, 20 AD3d at 703). Insofar as the court considered the reasonable needs of the wife and her predivorce standard of living (see Hartog v Hartog, 85 NY2d 36, 52 [1995]), and set out the factors it found most relevant (see Louie v Louie, 203 AD3d 1520, 1521 [3d Dept 2022]), the amount of maintenance the court awarded will remain undisturbed. We likewise find no abuse of discretion with the 40.5-month duration of the maintenance award, which is within the statutory guidelines and based upon a reasoned analysis of the relevant factors (see Domestic Relations Law § 236 [B] [6] [f]; Harris v Schreibman, 200 AD3d at 1121).
The husband also challenges Supreme Court's award of child support. Contrary to the husband's view, the court recited the statutory factors a court must consider in weighing whether to award child support above the income cap (see Domestic Relations Law § 240 [1-b] [c] [3]; [f]; Matter of Muok v Muok, 138 AD3d 1458, 1458-1459 [4th Dept 2016]), and identified and discussed the statutory factors the court found most relevant under the facts of the case while giving due consideration to the children's needs, including the need to maintain a standard of living for them that is commensurate with their predivorce lifestyle. Accordingly, we cannot say the court abused its discretion in calculating child support using a combined parental income of $635,000 (see Moffre v Moffre, 29 AD3d 1149, 1151 [3d Dept 2006]).
Also meritless is the husband's contention that Supreme Court's failure to mention the tax implications of the husband's child support and spousal maintenance obligations requires reversal (see Domestic Relations Law §§ 236 [6] [e] [1] [j]; 240 [1-b] [f] [4]). The court was not required to articulate every factor it considered, and its failure to identify the tax consequences to the husband is not fatal given its reasoned analysis discussing the factors upon which it relied (see Louie v Louie, 203 AD3d at 1521).
Insofar as the husband is the party responsible for the children's health insurance coverage, he is entitled to a credit for the wife's [*5]pro rata share of the children's health insurance costs. The husband testified that he pays $1,625 per month in insurance to cover himself, the children and the wife. Accordingly, Supreme Court must ascertain the cost of health insurance for the children and use that figure to calculate the wife's pro rata share and credit that amount to the husband (see Domestic Relations Law § 240 [1-b] [c] [5] [ii]; Harris v Schreibman, 200 AD3d at 1123). That said, we find no abuse of discretion in the court directing the parties to pay their pro rata shares of the children's extracurricular and educational activities (see Domestic Relations Law § 240 [1-b] [c] [4]; Matter of Spano v Spano, 168 AD3d 857, 860 [2d Dept 2019]).
Next, the husband challenges Supreme Court's directive that he purchase a life insurance policy with a minimum death benefit of $3.5 million to cover his support and maintenance obligations. Initially, the minimum coverage amount was superseded by the judgment of divorce, which directs him to maintain a $1 million policy — an amount the husband asserts is correct and the wife does not contest on appeal (compare Konigsberg v Konigsberg, 3 AD3d 330, 331 [1st Dept 2004]).[FN3] To the extent the husband's arguments may be read as requesting declining term coverage, the court's February 2024 order, which was incorporated into the judgment of divorce, appropriately permitted the husband to reduce his minimum coverage as his support obligations decreased over time but required him to always maintain a policy that covers all of his support obligations at the time, thereby implicitly allowing for declining term coverage (see Bell-Vesely v Vesely, 180 AD3d 1272, 1275 [3d Dept 2020]; Stuart v Stuart, 155 AD3d 1371, 1375 [3d Dept 2017]; Florio v Florio, 25 AD3d 947, 951 [3d Dept 2006]).
The husband next challenges the findings of civil contempt made against him. To sustain a finding of civil contempt for violation of the terms of an order, "it is necessary to establish by clear and convincing evidence that the party charged with contempt had actual knowledge of a lawful, clear and unequivocal order, that the charged party . . . disobeyed that order, and that this conduct prejudiced the opposing party's rights" (Matter of Michelle L. v Steven M., 227 AD3d 1159, 1163-1164 [3d Dept 2024] [internal quotation marks and citations omitted]; accord Matter of Brett J. v Julie K., 209 AD3d 1141, 1145 [3d Dept 2022]; see Judiciary Law § 753). "This Court will not overturn a contempt determination in the absence of an abuse of discretion" (Seale v Seale, 154 AD3d 1190, 1192 [3d Dept 2017] [citations omitted]).
We agree with the husband that Supreme Court abused its discretion in holding him in contempt for (1) violating the statutory automatic order barring him from changing his life insurance beneficiary upon commencement of this action (see Domestic Relations Law § 236 [B] [2] [b] [5]; 22 NYCRR 202.16-a [c] [5]), and (2) for failing to leave the marital residence [*6]in a neat and orderly condition at the conclusion of his weekend parenting time, in violation of the parties' stipulation that the court so-ordered on December 9, 2022. As to the first alleged violation, even though personal service of an order "is not necessary to hold a party in contempt thereof if the party had actual knowledge of that order" (City School Dist. of City of Schenectady v Schenectady Fedn. of Teachers, 49 AD2d 395, 398 [3d Dept 1975], appeal dismissed & lv denied 38 NY2d 820 [1975], lv denied 38 NY2d 707 [1975], appeal dismissed 38 NY2d 826 [1975]), and the husband changed the children's custodian on his life insurance from the wife to his sister on June 16, 2021 — one day after the wife commenced the action on June 15, 2021 — the mandate prohibiting that change did not become binding on him until service of the automatic orders with the summons, which the court found to have occurred on June 29, 2021 (see Domestic Relations Law § 236 [B] [2] [b]; 22 NYCRR 202.16-a [b]). Similarly, the second violation, which was based upon the allegation that the marital residence was left in a shambles after the husband's parenting time, occurred on December 4, 2022, five days before the parties' stipulation was entered as a temporary order. Inasmuch as there was no order of the court barring the complained-of conduct in effect at the time these two alleged violations occurred (see generally El-Dehdan v El-Dehdan, 26 NY3d 19, 29 [2015]), the relevant contempt findings cannot stand. In light of that determination, we need not reach the husband's contention that the failure to interpose these violations in a new motion requires reversal.
We reject the husband's contention that the other three contempt findings suffer from substantive and procedural defects. The documents and credited testimony establish by clear and convincing evidence that the husband was bound by and had knowledge of the orders he was found to have violated, and that he did violate those orders by (1) unnecessarily entering the master bedroom in violation of Supreme Court's November 18, 2022 order; (2) paying certain family expenses from the precommencement balances of the parties' joint accounts, in violation of the court's August 8, 2022 order; and (3) making inappropriate comments about this divorce action in the presence of the children, in violation of the court's September 12, 2022 order. Contrary to the husband's assertion, the credited testimony establishes the prejudice element for each of these violations (see Matter of Cobane v Cobane, 119 AD3d 995, 996 [3d Dept 2014]). Further, the court permitted the wife to supplement her contempt application in her posttrial submissions, and the husband did not object to that procedure. Therefore, the husband waived his contentions that the November 2022 contempt motion did not comply with Judiciary Law § 756 or did not provide him with sufficient notice of the allegations when he appeared at trial and defended against the alleged [*7]violations of the court's orders without registering a timely protest; and, in any event, the contentions are meritless (see Matter of Hensley v DeMun, 163 AD3d 1100, 1101 [3d Dept 2018]; Matter of Keator v Keator, 211 AD2d 987, 987-988 [3d Dept 1995]; compare Matter of Tonya YY. v James ZZ., 220 AD3d 1149, 1150 [3d Dept 2023]).
Finally, Supreme Court did not abuse its discretion in awarding the wife counsel fees in the amount of $100,000. The wife, as the less-monied spouse, was presumptively entitled to the award of counsel fees (see Victoria M. v Christopher L., 232 AD3d 1098, 1099 [3d Dept 2024]). The court appropriately considered the parties' respective financial circumstances, the relative merit of the parties' positions, the complexity of the case and the husband's failure to adhere to its orders, which conduct created more issues to litigate. Notably, the court did not award the wife the full $150,000 requested. As the court explained the basis of its award, and that explanation is supported by the record, we will not disturb the award of counsel fees (see Morrissey v Morrissey, 224 AD3d 940, 941 [3d Dept 2024]; Branche v Holloway, 124 AD3d 553, 555 [1st Dept 2015]).
The husband's remaining contentions, to the extent not specifically addressed, have been assessed and found to be unavailing.
Pritzker, Reynolds Fitzgerald, Ceresia and Powers, JJ., concur.
ORDERED that the appeal from the order is dismissed, without costs.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as directed defendant to pay 100% of the children's health insurance costs and so much thereof as found defendant in contempt for violating the automatic orders and the parties' so-ordered stipulation; the parties are directed to pay their pro rata shares of the children's health insurance; the fine for contempt is reduced to $750; matter remitted to the Supreme Court for further proceedings not inconsistent with this decision; and, as so modified, affirmed.

Footnotes

Footnote 1: The husband's right to appeal from the February 2024 order terminated upon entry of the judgment of divorce; however, the appealed-from judgment brings up for review the issues in that order (see Gaudette v Gaudette, 222 AD3d 1313, 1314 n 1 [3d Dept 2023]).

Footnote 2: According to the parties' stipulation, the lake house was valued at $700,000 in 2021 with an outstanding loan principal of $357,500 as of the date of commencement of the action, whereas the marital residence was valued at $936,000 with an outstanding loan principal of $796,891.

Footnote 3: The wife submitted the proposed judgment of divorce.